**HACIENDA MEXICAN RESTAURANT OF KALAMAZOO CORP., et al, Defendants–Appellants,**

v.

**HACIENDA FRANCHISE GROUP, INC., Plaintiff–Appellee.**

No. 71A04–9005–CV–00234.[1]

Court of Appeals of Indiana, Fifth District.

April 8, 1991.

Transfer Denied May 30, 1991.

---

**1.** This case has been diverted to this office by order of the Chief Judge.

Ross E. Chapman, Deming, Hughey, Lewis, Allen & Chapman, P.C., Kalamazoo, Mich. and Donald E. Wertheimer, South Bend, for defendants-appellants.

Joseph L. Amaral and Richard D. Bonewitz, Hammerschmidt, Bonewitz, Amaral & Jonas, South Bend, for plaintiff-appellee.

SHARPNACK, Judge.

Defendants-appellants-franchisees, Hacienda Mexican Restaurant of Kalamazoo Corp., Albert Mickelson, and Scott Borsodi (hereinafter "franchisees") bring this interlocutory appeal from the grant of a preliminary injunction. Plaintiff-appellee-franchisor, Hacienda Franchise Group, Inc. (hereinafter "franchisor") has filed a motion to dismiss the appeal on the basis that the questions presented are moot. We find that the appeal is not moot, and we affirm in part and reverse in part.

Franchisor raises one issue:

Is franchisees' appeal moot due to the fact that franchisees have ceased operation as a restaurant, abandoned the property upon which they operated, and disposed of their equipment?

Franchisees raise four issues for review which we restate and reorganize as:

1. Did the trial court abuse its discretion when it issued a preliminary injunction on the basis that:

 A. Franchisor did not establish that it had properly terminated the franchise agreement?

 B. Franchisor did not prove that it would have had no adequate remedy at law if its application for a preliminary injunction was denied?

 C. The trial court improperly placed the burden upon franchisees to prove that the potential harm to them stemming from the grant of the injunction outweighed the potential harm to franchisor from the denial of an injunction, and that the franchisor did not meet its burden on this issue?

2. Did the trial court err when it issued a preliminary injunction without requiring franchisor to post security?

The parties entered into a franchise agreement on January 5, 1989, and franchisees began operations in October of that

year. Franchisees fell behind in royalty payments almost immediately. They made no payments for January. Franchisor sent a letter demanding payment on February 2, 1990 and franchisees brought themselves current on February 19. They made payments, which were a week or more late, on March 10. Royalties due on March 29 were a week late when, on April 5, 1990, franchisor sent a letter to franchisees invoking its right to terminate the franchise agreement without notice under Article XIV(A)(15) of the agreement which provides for termination by franchisor upon three defaults. Franchisees paid on April 6, unilaterally treated the matter as a cured default, and continued operation.

Franchisor filed a complaint seeking an order permanently enjoining franchisees from: continuing to operate as a Hacienda Mexican Restaurant, operating as a Mexican restaurant in general, using or possessing any trade marks or copyrighted materials belonging to franchisor, using or possessing any food or beverage recipes belonging to franchisor, and using or possessing any confidential information, signs, symbols, trade dress, advertising or other property bearing the name and style of Hacienda Mexican Restaurants or belonging to franchisor. Franchisor also sought damages. Franchisor filed a motion for preliminary injunction asking that franchisees be enjoined from the same acts enumerated in the original complaint. Franchisees filed a cross motion for preliminary injunction.

The court scheduled a hearing on the motion for preliminary injunction for April 17. At that hearing, franchisees asked for a continuance arguing that they believed franchisor intended to litigate alleged violations of the franchise agreement beyond tardy royalty payments and that their reading of the complaint led them to prepare only for the issue of tardy royalty payments. The court continued consideration of any violations of the agreement beyond a default in royalty payments to a hearing on April 25 and admonished the attorneys to confine their questions accordingly. The parties limited their evidence to the issue of late royalty payments. Upon the conclusion of evidence, counsel for franchisor asserted that a provision in the franchise agreement (Article XVIII(A)) allowed for equitable relief to be granted without the posting of a bond.

At the conclusion of the hearing, the court discussed with the attorneys what the hearing had accomplished and what issues were to be presented at the April 25th hearing. The court agreed to rule on the issue of whether the contract had been properly terminated on the basis of defaults in royalty payments and whether to grant a preliminary injunction on that basis.

The court issued a preliminary injunction on April 24 accompanied by its findings. The court's order states:

> [I]t is Ordered that the Defendant, its agents, servants, employees and attorneys and all persons in active concert and participation with Defendant be and they are hereby restrained and enjoined, pending determination of this action from:
>
> 1. Operating a Mexican restaurant under the name and style of Hacienda Mexican restaurant.
>
> 2. Operating a Mexican restaurant in general.
>
> 3. Using or possessing any trademarks or copyrighted materials belonging to Hacienda Franchise Group, Inc.
>
> 4. Using or possessing any food or beverage recipes belonging to the Plaintiffs.
>
> 5. Using or possessing any confidential information, signs, symbols, trade dress, advertising or other property bearing the name and style of Hacienda Mexican Restaurants or belonging to the Plaintiff.

The court was silent as to the need for franchisor to post security and no security was given.

On February 28, 1991, Franchisor filed a motion to dismiss the appeal as moot. Franchisor alleges that franchisees continued in the restaurant business under the name Santa Fe Bar & Grill following the injunction, but that they subsequently discontinued operation and abandoned the

premises, leaving their equipment on the premises.

Other relevant facts will be set out in the opinion as necessary.

Franchisor contends that this appeal has become moot due to the fact that franchisees have discontinued operation as a restaurant, relinquished possession of the property upon which they operated as a restaurant, and disposed of their equipment. Franchisor argues that franchisees have rendered themselves unable to continue operation as a franchisee or otherwise.

 This court will only decide real questions or controversies and will not consider moot or abstract propositions. *International Harvester Co. v. Snavely* (1959), 129 Ind.App. 567, 158 N.E.2d 802. An issue becomes moot when:

1. it is no longer "live" or when the parties lack a legally cognizable interest in the outcome;

2. the principal questions in issue have ceased to be matters of real controversy between the parties; or

3. the court on appeal is unable to render effective relief upon an issue.

*Haggerty v. Bloomington Board of Public Safety* (1985), Ind.App., 474 N.E.2d 114, 115–116. There is a real controversy between the parties in this case. Franchisees presently are subject to contempt of court if they try to operate as a Hacienda franchise or as a Mexican restaurant in general. It may be unlikely that they will do so, but it is not impossible. They dispute the court imposed restraint upon their actions. This court can render effective relief by removing this constraint if we decide that the trial court erred when it granted the preliminary injunction. We find that the appeal is not moot, deny the motion to dismiss the appeal, and now turn to the merits of the appeal.

There are several factors upon which a court must base the exercise of its equitable discretion when deciding whether to issue a preliminary injunction. The party seeking the injunction must make at least a *prima facie* showing of the violation of some legal right. *Indiana Annual Conference Corporation v. Lemon* (1956), 235 Ind. 163, 167, 131 N.E.2d 780, 782. The movant also must demonstrate that he will suffer irreparable harm if his request for a preliminary injunction is denied. *Id.* Indiana courts have also held that the party requesting a preliminary injunction must show the lack of an adequate remedy at law, *McKain v. Rigsby* (1968), 250 Ind. 438, 444, 237 N.E.2d 99, 103, although in this case, as in most cases, proof of one necessarily serves as proof of the other. *Steenhoven v. College Life Ins. Co. of America* (1984), Ind.App., 458 N.E.2d 661, 665, *reh'g denied,* (1984), Ind.App., 460 N.E.2d 973. The extent to which the movant has shown the likelihood of success on the merits of his claim will affect the degree and likelihood of the potential harm the movant must demonstrate. *See Wells v. Auberry* (1982), Ind.App., 429 N.E.2d 679, 683, *trans. denied.* In addition, the trial court must weigh the relative potential harms to the parties stemming from the issuance of an injunction as well as the effect of the grant or denial of the injunction on the public interest. *Rees v. Panhandle Eastern Pipe Line Co.* (1978), 176 Ind.App. 597, 609, 377 N.E.2d 640, 648.

 In reviewing the grant or denial of a preliminary injunction, we will only reverse where the trial court has clearly abused its discretion. *Lemon,* 235 Ind. at 167, 131 N.E.2d at 780. To make this determination, we must look to the special findings the trial court is required to file under Trial Rule 52(A) when it grants or denies a preliminary injunction. Such findings are adequate unless they are "clearly erroneous." *Steenhoven,* 458 N.E.2d at 665. If the findings are sufficient to disclose a valid basis under the issues for the legal result reached in the judgment and are supported by evidence of probative value, they are not clearly erroneous. *Id.*

 Although franchisees did not specifically state an issue alleging that franchisor failed to make a prima facie case on the merits of its claim that it rightfully terminated the franchise agreement, they make such a claim throughout their briefs. Franchisees contend that, even if there

were three defaults, franchisor could not terminate under the provision allowing termination for three defaults within eighteen months because eighteen months had not yet expired, and that late royalty payments could not justify termination under Indiana law.

Franchisor needed to demonstrate that it had properly terminated the franchise agreement in order to establish that the acts it sought to enjoin would have been in violation of its legal rights. The evidence was undisputed that franchisor terminated the agreement on April 5, 1990. The language of the agreement is clear. Franchisor had the right to terminate in the event the franchisee defaulted three times in any eighteen month period. Franchisor was not required to give notice or an opportunity to cure. Franchisees do not contest, for the purposes of this appeal, the trial court finding that they were late with royalty payments at least three times. The trial court finding that the late payments were a violation of the agreement is supported by the evidence and the agreement. Franchisees' claim that the franchise agreement could not be terminated under Article XIV A(15) regardless of the number of defaults in royalty payments because eighteen months had not elapsed since the franchise agreement had become operational has no merit.

Franchisees claim that IND.CODE § 23-2-2.7-1 prohibited franchisor from terminating the agreement for late royalty payments. That section provides:

It is unlawful for any franchise agreement entered into between any franchisor and a franchisee ... to contain any of the following provisions: *

\* \* \* \* \* \*

(7) Permitting unilateral termination of the franchise if such termination is without good cause or in bad faith. Good cause within the meaning of this subdivision includes any material violation of the franchise agreement.

Franchisees cite *Wright–Moore Corp. v. Ricoh Corp.* (7th Cir.1990), 908 F.2d 128 for the proposition that under I.C. 23-2-2.-7-1 a franchisor cannot unilaterally termi-

nate a franchise agreement for economic reasons and argue that termination for late royalty payments would be for an economic reason.

■ Indiana Code section 23-2-2.7-1 does not prohibit the Article XIV A(15) provision for unilateral termination upon franchisee being in default three times. That section allows contract provisions permitting unilateral termination for good cause. The statute also states that material violation of the franchise agreement constitutes good cause but does not limit good cause to material violations. *Wright–Moore*, 908 F.2d at 137. Article XIV A only allows for unilateral termination upon three breaches or defaults. Without addressing whether the defaults amounted to a material violation of the franchise agreement, we hold that Article XIV A(15) does not permit termination without good cause.

*Wright–Moore* is distinguishable from this case. *Wright–Moore* only prohibits unilateral termination by the franchisor for internal economic reasons. The *Wright–Moore* court emphasized that "[t]here is no evidence that Wright–Moore breached the franchise agreement, so Ricoh's [franchisor] actions did not fall within the plain terms of the statute." *Wright–Moore*, 908 F.2d at 137. In that case the franchisor claimed its refusal to renew the franchise agreement was based on a change in its marketing strategy. *Id.* at 130. Here, the termination was based upon franchisees' defaults and franchisor therefore demonstrated that it had properly terminated the franchise agreement.

■ Franchisor also needed to demonstrate that, once the agreement was terminated, franchisees' continued performance of the acts sought to be enjoined would be a violation of franchisor's legal rights. The franchise agreement contained the following provisions:

ARTICLE VII. TRADEMARKS

A. USE OF NAME. FRANCHISOR hereby grants to FRANCHISEE, upon the terms and conditions herein contained, during the term hereof, the right to use and display FRANCHISOR'S

Marks, but only in connection with the operation and services granted by this AGREEMENT. . . . Nothing herein shall give FRANCHISEE any right, title, or interest in or to any of FRANCHISOR'S Marks, insignia, labels or designs, or any of the same, except a mere privilege and franchise during the term hereof. . . .

\* \* \* \* \* \*

ARTICLE XIV. DEFAULT AND TERMINATION

\* \* \* \* \* \*

E. EFFECT OF TERMINATION

\* \* \* \* \* \*

4. Upon termination of the franchise, FRANCHISEE shall immediately return to FRANCHISOR at its own expense all materials belonging to FRANCHISOR, including manuals, software programs, filmstrips, marketing materials, equipment, documents, forms, and all other items that are the property of FRANCHISOR.

\* \* \* \* \* \*

6. Upon termination of the franchise, FRANCHISEE shall immediately and permanently discontinue using any of FRANCHISOR'S marks, confidential information, copyrighted materials, signs, symbols, trade dress, advertising, and other property of FRANCHISOR.

Franchisor, therefore, made a strong showing that the following acts by franchisees would be in violation of its legal rights:

1. Operating a Mexican restaurant under the name and style of Hacienda Mexican Restaurant.

\* \* \* \* \* \*

3. Using or possessing any trademarks or copyrighted materials belonging to Hacienda Franchise Group, Inc.

4. Using or possessing any food or beverage recipes belonging to the Plaintiffs.

5. Using or possessing any confidential information, signs, symbols, trade dress, advertising or other property bearing the name and style of Hacienda Mexican Restaurants or belonging to the Plaintiff.

The court's finding that franchisor had a reasonable likelihood of success at trial with regard to establishing these rights was not clearly erroneous.

■ However, franchisor failed to introduce evidence that any legal right would be violated by franchisees "operating a Mexican restaurant in general." The only thing in the record which purports to restrict franchisees' rights to operate a Mexican restaurant other than a Hacienda Mexican Restaurant is Article XV of the franchise agreement. That article reads, in relevant part:

C. Post–Term Covenants. In the event the FRANCHISE AGREEMENT is terminated through default of the FRANCHISEE . . . the FRANCHISEE and the principals hereinafter named shall not, for a period of two (2) years subsequent to said termination, within a fifty mile radius of any HACIENDA MEXICAN RESTAURANT engage in any similar Mexican restaurant or food business. . . .

We do not need to decide whether this covenant is enforceable because the court's order is not tied to the specific geographic limitations of the covenant. Because there is no evidence in the record to support the portion of the trial court's order enjoining franchisees from "operating a Mexican restaurant in general" we reverse and order the trial court to dissolve that portion of the preliminary injunction.

Franchisees next contend that the trial court abused its discretion due to the absence of proof that franchisor's remedy at law for any possible harm franchisor might suffer prior to a trial on the merits would be inadequate or that franchisor would suffer irreparable injury if its application for preliminary injunction were to be denied. To analyze this issue, we must consider the trial court's finding that franchisor's remedies at law were inadequate in that franchisees were open and doing business despite the termination letter. Article XVIII A of the franchise agreement states:

FRANCHISOR shall be entitled, without the posting of any bond or security, to the entry of temporary and permanent injunctions and orders of specific per-

formance enforcing the provisions of this AGREEMENT relating to: (1) the FRANCHISEE'S improper use of the franchised marks and business system; (2) the obligations of the FRANCHISEE upon termination or expiration of this AGREEMENT....

The agreement clearly prohibits franchisees from engaging in any of the enjoined acts with the exception of operating a Mexican restaurant in general. The question of whether, under Indiana law, such a provision can be given effect by a court of equity has not been addressed by our courts. In fact, it has been addressed by few courts across the country.

We express doubt that a court *must* give effect to such a provision in exercising its equitable jurisdiction. As noted above, a court must consider several factors in determining whether to issue a preliminary injunction, including the effect the grant or denial of an injunction might have on the public interest. *Rees*, 176 Ind.App. at 609, 377 N.E.2d at 649. Such was the opinion of the court in *Stokes v. Moore* (1955), 262 Ala. 59, 64, 77 So.2d 331, 335 which wrote:

> We do not wish to express the view that an agreement for the issuance of an injunction, if and when a stipulated state of facts arises in the future, is binding on the court to that extent. Such an agreement would serve to oust the inherent jurisdiction of the court to determine whether an injunction is appropriate when applied for and to require its issuance even though to do so would be contrary to the opinion of the court.

*Id.*

■ However, the present case comes to us as an appeal from the grant of an injunction, and we only need to address the question of whether, in exercising its discretion, the trial court could give some effect to the parties' agreement on preliminary injunctive relief. As to this question the, *Stokes* court said, "[w]e also think the provision for an injunction is important in its influence upon an exercise of the discretionary power of the court to grant a temporary injunction." *Id.* We agree and find that the parties' express intention that franchisor was entitled to a preliminary injunction to enforce franchisees' obligations upon termination of the agreement supports the court's exercise of its discretion.

■ In addition, the court properly considered the fact that franchisees continued to operate using franchisor's name and marks as at least some evidence of irreparable harm even without specific evidence that franchisees were likely to act in such a way as to harm franchisor's reputation. Although we find no Indiana law specifically on point, the United States Court of Appeals for the Seventh Circuit addressed a similar issue in *Processed Plastic Co. v. Warner Communications* (7th Cir.1982), 675 F.2d 852. In that case, the court upheld an order enjoining defendant from selling or distributing toy cars bearing symbols of origin which had become associated with the car known as "General Lee" in the "Dukes of Hazzard" television series. *Id.* In reaching its holding the court explained:

> This and many other courts have often recognized that the damages occasioned by trademark infringement are by their very nature irreparable and not susceptible of adequate measurement for remedy at law. [citations omitted] [T]his readiness to find irreparable injury arises in part from the realization that "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendant's goods. Even if the infringer's products are of high quality, the plaintiff can properly insist that its reputation should not be imperiled by the acts of another."

*Id.* at 858 (quoting *Ideal Industries, Inc. v. Gardner Bender Inc.* (7th Cir.1979), 612 F.2d 1018, 1024 (quoting 4 R. CALMANN UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES, section 88.-3(b) at 205 (3rd ed. 1970))).

■ The fact that franchisor would be forced to place its reputation in the hands of another with whom franchisor asserted it no longer had or desired to have a contractual relationship is evidence of irrepara-

ble harm. This fact combined with the express intent of the parties that franchisor would be entitled to a preliminary injunction to enforce its rights under the franchise agreement and the franchisor's showing of a likelihood of success on the merits of its claim that it had properly terminated the franchise agreement leads us to the conclusion that the trial court did not abuse its discretion when it preliminarily enjoined franchisees from:

1. Operating a Mexican Restaurant under the name and style, Hacienda Mexican Restaurant.

\* \* \* \* \* \*

3. Using or possessing any trademarks ... belonging to Hacienda Franchise Group, Inc.

\* \* \* \* \* \*

5. Using or possessing any ... signs, symbols, trade dress, or other property bearing the name and style of Hacienda Mexican Restaurants....

■ We also find that the trial court did not abuse its discretion with respect to the portions of its order enjoining franchisees from "using or possessing ... copyrighted materials belonging to Hacienda Franchise Group, Inc." and "using or possessing any confidential information, advertising or other property ... belonging to plaintiff." Although the inference of irreparable harm stemming from the unauthorized use of franchisor's trademarks or tradename was unavailable in this instance, the court was entitled to give effect to the parties' express intent that franchisor would be entitled to injunctive relief to prevent these acts, particularly in light of franchisor's demonstrated likelihood of success on the merits of its claims.

■ Franchisees also claim that the trial court incorrectly allocated the burden of proof regarding the balancing of hardships. The burden is upon the movant to demonstrate that the potential harm resulting from the denial of its application outweighs the potential harm to the non-movant stemming from the grant of injunctive relief. *Michels v. Dyna–Kote Industries Inc.* (1986), Ind.App., 497 N.E.2d 586, 588.

Franchisees base their claim on the following statement in the court's findings: "The harms are balanced." (Record, 226). They assert that franchisor could not have met its burden because it presented no evidence of irreparable harm or inadequate remedy at law and because an injunction threatened to put franchisees out of business.

■ We do not accept franchisees' interpretation of the court's statement. If a statement in the court's findings is ambiguous, we must read it to support the court's judgment. This is consistent with the well established rule that we will affirm if we conclude that the special findings of the trial court are not clearly erroneous. *Steenhoven*, 458 N.E.2d at 665. We read the statement in question to mean that the court engaged in the act of balancing the harms, and, as indicated by the findings and judgment considered as a whole, that franchisor met its burden of proof. As discussed above, the court's finding that franchisor had no adequate remedy at law was supported by probative facts. This, combined with franchisor's demonstrated likelihood of success at a full trial on the merits, leads us to conclude that the court's finding that the balance of harms favored franchisor was not clearly erroneous.

Finally, franchisees contend that the trial court erred when it issued the preliminary injunction because it did not require franchisor to post an adequate surety bond and that such a requirement is mandatory in the context of applications for preliminary injunctions. Trial Rule 65(C) provides:

No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained....

Franchisees contend that the trial court had no discretion to eliminate the bond requirement, but only to set the amount. Franchisees admit that franchisor pointed out to the court Article XVIII A of the

franchise agreement which entitled franchisor to a preliminary injunction, without the posting of security, to enforce franchisees' obligations upon termination and prevent franchisees' improper use of its franchised marks and business system. Franchisees insist this article does not apply to what they term a "pure money case." In addition, they argue that, even if the article does apply to the case at hand, it is void because it violates public policy. Franchisees contend that a review of T.R. 65(C) and principal cases reveals that T.R. 65(C) was not enacted solely for the protection of the litigants but was also meant to be a "rein on courts from 'willy nilly' excess in the use of awesome equitable powers." (Appellants' brief, p. 37) Franchisees, however, fail to point to any authority for this proposition.

The trial court did not abuse its discretion by granting a preliminary injunction without requiring franchisor to post security. As described above, Article XVIII(A) of the franchise agreement entitles franchisor to preliminary injunctive relief to enforce provisions of the agreement relating to improper use of its marks and the obligations of franchisee upon termination of the agreement without the posting of a bond. In our discussion of franchisor's claim on the merits, we found that, with the exception of the portion of the order enjoining franchisees from "operating a Mexican restaurant in general," the injunction enforces franchisor's rights regarding improper use of its marks and franchisees' obligations upon termination. The parties therefore have agreed to waive the T.R. 65(C) security requirement.

The trial court was correct to enforce the agreement. It is a general principle of law that, "[o]rdinarily, an individual may waive any right provided for his benefit by contract, by statute or by the constitution." *Brown v. State* (1941), 219 Ind. 251, 261, 37 N.E.2d 73, 77. It is also clear that "parties to a contract are free to include any provisions therein they desire which do not offend the public policy of our state." *University Casework Systems v. Bahre* (1977), 172 Ind.App. 624, 630, 362 N.E.2d 155, 159.

Franchisees assert that the parties could not contract to waive the T.R. 65(C) security requirement because such a contract is against public policy. Franchisees cite no authority to support this contention. The security requirement is intended to compensate the defendant for damages resulting from a preliminary injunction if he prevails at a later hearing. It is a "convenient manifestation of financial responsibility on the part of the plaintiff." *Howard D. Johnson Co. v. Parkside Development Co.* (1976), 169 Ind.App. 379, 389, 348 N.E.2d 656, 663–64. We find no policy of restraint on a court's exercise of its equitable discretion in T.R. 65(C). Franchisees could waive the protection afforded them by T.R. 65(C) and did so under the franchise agreement.

We note that the trial court erred when it did not require franchisor to post security for the portion of the order that enjoined franchisees from "operating a Mexican restaurant in general." Because we reverse this portion of the injunction, we do not need to remand for the trial court to set an amount for security. As the *Howard D. Johnson* court recognized in a case where the defendant sought additional security after the trial court had dissolved the preliminary injunction, "the time for posting security is past." *Id.* 169 Ind.App. at 388, 348 N.E.2d at 662.

For the reasons contained in this opinion, we reverse the portion of the trial court's order that enjoins franchisees from operating as a Mexican restaurant in general, and affirm the trial court in all other respects.

AFFIRMED IN PART AND REVERSED IN PART

GARRARD and CHEZEM, JJ., concur.