**TWO MEN AND A TRUCK/INTERNA-TIONAL INC., a Michigan corporation f/k/a Two Men and a Truck/USA, Inc., Plaintiff,**

v.

**TWO MEN AND A TRUCK/KALAMA-ZOO, INC., a Michigan corporation; T & M Express, Inc., an Indiana corporation; Two Men and a Truck/Northern Indiana, Inc., an Indiana corporation; Mark D. Mayes, an individual; and Keum Lee Mayes, an individual, Defendants.**

No. 5:94–CV–162.

United States District Court, W.D. Michigan, Southern Division.

Sept. 27, 1996.

Steven M. Raymond, May, Simpson & Strote, Bloomfield Hills, MI, for Two Men and a Truck/International, Inc.

Matthew W. Schlegel, Kupelian, Ormond & Magy, Southfield, MI, for Two Men and a Truck/Kalamazoo, Inc.

Matthew W. Schlegel, Kupelian, Ormond & Magy, Southfield, MI, R. Todd Redmond, Kalamazoo, MI, Don C. Huprich, Huprich & Associates, P.C., Tucker, GA, for T and M Express, Inc., Two Men and a Truck/Northern Indiana, Mark D. Mayes, Keum Lee Mayes.

## OPINION

QUIST, District Judge.

Before this Court is plaintiff's motion for partial summary judgment on Counts I, II, IV, V, VI, and VII of the Complaint filed by Two Men and a Truck/International, Inc. ("plaintiff") against Two Men and a Truck/Kalamazoo, Inc., T and M Express, Inc., Two Men and Truck/Northern Indiana, Mark D. Mayes, and Keum Lee Mayes ("defendants"), and on all counterclaims brought by defendants against plaintiff.

### Introduction

Plaintiff is a franchisor of moving service businesses throughout the United States. Defendants were franchisees of plaintiff. As a result of defendants failure to pay royalties and advertising fees and their failure to file monthly sales reports for two of defendants' franchise locations as required pursuant to the Franchise Agreements, plaintiff terminated the franchise relationships. However, defendants continued to operate the franchises and use plaintiff's name and mark. Plaintiff brought an action for unfair competition and trademark infringement, for breach of several agreements that the defendants executed in connection with the franchises, and for business libel. Plaintiff seeks damages and injunctive relief.

In their Answer, defendants admit that they did not pay the royalties and advertising fees in dispute and that they did not file the monthly sales reports as alleged by plaintiff. However, defendants claim that their failure to pay the fees and file the reports is excused because of various claims asserted in their counterclaims.

On July 24, 1995, this Court granted Plaintiff's Motion for Preliminary Injunction against the defendants enjoining defendants from continued use of plaintiff's names, trade names, and trademarks. Plaintiff filed a motion for partial summary judgment on Counts I, II, IV, VI and VII of the Complaint and on all of defendants' counterclaims, which is the subject of this Opinion.

### Discussion

#### A. Legal Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judgment. *Id.* at 248, 106 S.Ct. at 2510. The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* This standard requires the non-moving party to present more than a scintilla of evidence to defeat the motion. *Id.* at 251, 106 S.Ct. at 2511 (citing *Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1872)). The summary judgment standard mirrors the standard for a directed verdict. *Id.* at 250, 106 S.Ct. at 2511. The only difference between the two is procedural. *Id.* Summary judgment is made based on documentary evidence before trial, and directed verdict is made based on evidence submitted at trial. *Id.*

A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the

motion is so supported, the party opposing the motion must then demonstrate with "concrete evidence" that there is a genuine issue of material fact for trial. *Id.; Frank v. D'Ambrosi*, 4 F.3d 1378, 1384 (6th Cir.1993). The court must draw all inferences in a light most favorable to the non-moving party, but the court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

## B. Analysis

### 1. *Unfair Competition*

■ In Count I, plaintiff asserts a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[1] This section provides a federal claim for misrepresentations and false descriptions, and acts deceptive as to the identity of the manufacturer, seller, or service. Beverly W. Pattishall et al., *Trademarks and Unfair Competition* 168 (1996). In Count II, plaintiff alleges violations of Michigan and Indiana common law regarding unfair competition. The scope of the law in Michigan on unfair competition is similar to federal law. The same factors should be used in the legal analysis. *Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 605 (6th Cir.1991) (finding that the Michigan Supreme Court would evaluate a common law claim of unfair competition using the same factors as applied in federal claims involving unfair competition); *Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 833 (6th Cir.1983) (noting that the test for equitable relief under both Section 43(a) and Michigan common law is the "likeli-

hood of confusion" standard). Therefore, the following analysis will apply to both the federal law and Michigan common law claims. The analysis of unfair competition under Indiana common law will be discussed thereafter.

Under the Lanham Act, the standard for trademark infringement is the "likelihood of confusion" test. As one scholar noted:

> The concept of prior use and the resultant development of an identifying significance deserving of protection against a likelihood of confusion are the touchstones upon which Anglo–American trade identity law was built ... Deceptively simple, the test of likelihood of confusion is the essential statement of what trade identity unfair competition is all about under the common law and the federal statute.

Pattishall, *supra*, at 74. *See also Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d at 833 (stating that the test for equitable relief under both Section 43(a) and Michigan common law is the "likelihood of confusion" standard).

■ The "likelihood of confusion" test is satisfied if a former franchisee continues to use the franchisor's trademarks after termination or revocation of a franchise agreement. *See S & R Corp. v. Jiffy Lube Intern, Inc.*, 968 F.2d 371, 375 (3d Cir.1992) (holding that concurrent use of legally profitable trademark is highly likely to cause consumer confusion as to defendant's affiliation with the franchise); *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville*, 670 F.2d 642, 646–47 (6th Cir.1982), *cert. denied*, 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982) (finding that after proper termination of a franchise agreement continued use by defendants of a trademark constitutes a violation of Section 43(a) of the Lanham Act); *Little*

---

1. The relevant portion of the Lanham Act is as follows:
 (a)(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device ... which—
 (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection ... or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities ... of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
 15 U.S.C.S. § 1125(a) (Law.Co-op.Supp.1996).

*Caesar Enters., Inc. v. R–J–L Foods, Inc.,* 796 F.Supp. 1026, 1034–35 (E.D.Mich.1992) (likelihood of confusion existed when former franchisee continued use of Little Caesar Enterprises trademark after termination of rights). In *Burger King v. Mason,* 710 F.2d 1480 (11th Cir.1983), *cert. denied,* 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984), the Eleventh Circuit stated:

> Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks. A patron of a restaurant adorned with the Burger King trademarks undoubtedly would believe that BKC endorses the operation of the restaurant. Consumers automatically would associate the trademark user with the registrant and assume that they are affiliated. Any shortcomings of the franchise therefore would be attributed to BKC. Because of this risk, many courts have held that continued trademark use by one whose trademark license has been cancelled satisfies the likelihood of confusion test and constitutes trademark infringement.

*Id.* at 1492–93 (citations omitted).

Defendants' continued operation of their moving businesses meets the "likelihood of confusion" test under Section 43(a) of the Lanham Act. The record establishes that defendants continued to use the "Two Men and a Truck" name and mark after their rights to use the name and mark were terminated. In its Order for Preliminary Injunction, this Court did not find it necessary to analyze the elements of an unfair competition and trademark infringement claim. The Court found that defendants were estopped from challenging the ownership and validity of the name and mark because "the law is well settled that 'continuing to use a franchise mark after the franchisee relationship has been terminated is a violation of the Lanham Act.'" *Two Men and a Truck/Int'l, Inc. v. Two Men and a Truck/Kalamazoo, Inc.,* No. 5:95–CV–162, 1995 WL 549278 at *5 (W.D.Mich. July 24, 1995) (citing *Two Men and a Truck, Int'l v. Surestack, Inc.,* No. 95–1421 (6th Cir. May 19, 1995). Therefore, this Court finds that defendants violated Section

43(a) of the Lanham Act by continuing to use the "Two Men and a Truck" name and mark after their rights to use the name and mark were terminated. Defendants' conduct also constitutes unfair competition and trademark infringement under Michigan common law.

■ Unfair competition under Indiana common law is similar to that of federal law. Under Indiana common law, unfair competition is defined as:

> [P]assing off, or attempting to pass off, upon the public, the goods or business of another. It consists essentially in the conduct of a trade or business in such a manner that there is either an express or implied representation to that effect.

*Beacham v. Macmillan, Inc.,* 837 F.Supp. 970, 977 (S.D.Ind.1993) (quoting *Hammons Mobile Homes, Inc. v. Laser Mobile Home Transport,* 501 N.E.2d 458, 461 (Ind.App. 1 Dist.1986) (also citing *Liquid Controls Corp. v. Liquid Control Corp.,* 802 F.2d 934, 940 (7th Cir.1986) (finding that "passing off" means "trying to get sales from a competitor by making consumers think that they are dealing with that competitor when they are buying from the passer off.")). In the case at hand, this Court believes that defendants, by continuing the use of the "Two Men and a Truck" name and mark, were trying to expressly pass off to the public that they were connected with the plaintiff's franchise. In any event, since the "likelihood of confusion" test has been satisfied by the plaintiff under federal law, plaintiff's unfair competition claim under Indiana common law is strongly supported. Thus, this Court finds that defendants have violated the unfair competition laws of Indiana.

Defendants argue, however, that various violations by plaintiff of franchise statutes in Michigan and Indiana preclude plaintiff from pursuing federal and state claims against defendants. First, defendants argue that the Franchise Agreements were never properly terminated by plaintiff; thus, defendants' continued use of plaintiff's name and mark does not constitute violations of Section 43(a) of the Lanham Act or common law unfair competition.

■ The Michigan Franchise Investment Law ("MFIL") provides that a franchise agreement can be terminated only for "good cause." M.C.L.A. 445.1527 (West 1989). Under the statute, "good cause" includes:

the failure of the franchisee to comply with any lawful provision of the franchise agreement and to cure such failure after being given written notice thereof and a reasonable opportunity, which in no event need be more than 30 days, to cure such failure.

M.C.L.A. 445.1527(c). Although the standard of "good cause" under the MFIL is unclear, the MFIL has been drafted broadly compared to a number of other state statutes which proscribe specific situations which constitute "good cause." Note, *Balancing a Relationship—"Good Cause" Termination of Franchise Agreements in Michigan,* 72 U.Det.Mercy L.Rev. 369, 382–84 (1995). Additionally, failure to pay money is almost always sufficient to constitute "good cause." Lawrence I. Fox, Practising Law Institute, Order No. B4–6742, *State Franchise, and Dealer Protection Laws* 508 (1986). *See also McDonald's Corp. v. Robert A. Makin, Inc.,* 653 F.Supp. 401 (W.D.N.Y.1986) (holding that where franchisor failed to pay monthly fees based on gross sales franchisor had right to terminate franchise agreement); *Bonanza Int'l, Inc. v. Restaurant Mgmt. Consultants, Inc.,* 625 F.Supp. 1431 (E.D.La. 1986) (regarding late payment of royalties); *Hacienda Mexican Restaurant of Kalamazoo Corp. v. Hacienda Franchise Group, Inc.,* 569 N.E.2d 661 (Ind.Ct.App.1991) (permitting "good cause" termination if franchisee defaulted three times in any 18 month period).

The record establishes that defendants failed to comply with lawful provisions in the Franchise Agreements by failing to pay royalties and advertising fees, and failing to file monthly sales reports. On October 25, 1994, plaintiff sent defendants a written notice informing them of plaintiff's intent to terminate the Franchise Agreements. In the notice, plaintiff indicated that the reasons for the termination were 1) failure to pay royalties, 2) failure to pay advertising fees, and 3) failure to file monthly sales reports. Pursuant to terms set forth in the Franchise Agreements, defendants were allowed ninety (90) days to cure the violations before the Agreements would automatically terminate. Plaintiff gave adequate notice of termination, stating reasons for the termination and giving defendants an opportunity to cure. Defendants' argument that plaintiff did not give adequate notice because plaintiff allowed only ten (10) days to cure the violations is unpersuasive. Whether the defendants received ten (10) days or ninety (90) days would not have mattered since defendants did not have any intention to cure. In fact, defendants claim that they rescinded the Agreements on or around November 2, 1994. To date, defendants have not offered to cure the violations. Thus, this Court finds that, under Michigan law, plaintiff had good cause to terminate the Franchise Agreements, and the Agreements were lawfully terminated.

■ In Indiana, a franchisor may terminate a franchise agreement for "good cause." *Wright–Moore Corp. v. Ricoh Corp.,* 908 F.2d 128, 136–37 (7th Cir.1990) (interpreting the Indiana Deceptive Franchise Practice Act). Section 23–2–2.7–1(7) of the Indiana Deceptive Franchise Act ("IDFA") prohibits termination without good cause and lists material violations of the franchise agreements as an acceptable reason for termination. I.C.A. 23–2–2.7–1(7) (West 1996). In *Hacienda Mexican Restaurant of Kalamazoo Corp.,* the Indiana Court of Appeals determined that a franchisor had properly terminated a franchise agreement due to the franchisee's third untimely royalty payment. *Hacienda,* 569 N.E.2d at 667. The Court rejected the defendant's argument that economic reasons, such as late royalty payments, did not constitute "good cause." *Id.* Unlike the defendants in *Hacienda,* the defendants in the case now before the Court were not late in royalty payments; they utterly failed to make royalty payments. This failure is a material violation of the Franchise Agreements. Thus, under Indiana law, plaintiff had good cause to terminate the Franchise Agreements and properly terminated them, as discussed previously.

■ Second, defendants claim that plaintiff violated Section 445.1505 of the MFIL by fraudulently misrepresenting the future prof-

it potential of plaintiff's franchises.[2] In addition, defendants claim that plaintiff violated Section 445.1508 of the MFIL by failing to provide defendants with required disclosure documents ten days prior to the signing of the TMT/Kalamazoo Franchise Agreement.[3] As such, defendants argue that they are entitled to rescind the Franchise Agreements pursuant to Section 445.1531 of the MFIL.[4] Defendants argue that if the Franchise Agreements are rescinded, there could be no violation of Section 43(a) of the Lanham Act or state common law, and no estoppel by agreement because the Franchise Agreements never existed.

As noted above, defendants claim that plaintiff violated Section 5 of the MFIL because of statements made by plaintiff's attorney and representative, Ray Damas. Mr. Damas allegedly made statements about the profit potential of plaintiff's franchises. Defendants also claim that plaintiff violated Section 8 of the MFIL by failing to provide an offering circular 10 days prior to the sale of the franchise to defendants. Plaintiff provided defendants with an offering circular on April 23, 1991, less than 10 business days prior to the signing of the Kalamazoo Franchise Agreement on May 1, 1991. Although plaintiff did not technically comply with Section 8, plaintiff did provide an offering circular to the defendants seven days prior to the signing, fulfilling the spirit of Michigan's disclosure requirement. *See Benson v. Sbarro Licensing, Inc.,* [1983–1985 Transfer Binder] Bus. Franchise Guide (CCH) p7967, at 13,597 (D.Minn. April 12, 1983) (although not technically satisfactory, franchisee did receive disclosure document from franchisor which fulfilled the spirit of Minnesota's franchise disclosure requirement). Although plaintiff failed to technically comply with Section 8 of the MFIL and may have violated Section 5 of the MFIL, defendants failed to properly rescind the Franchise Agreements. Furthermore, defendants failed to rescind the Franchise Agreements in a timely manner; thus waiving their right to rescission under Michigan law.[5] Moreover, defendants are not entitled to the remedy of rescission because they were in default of the Franchise Agreements when they attempted to rescind the Agreements.

In *Dynamic Enterprises, Inc. v. Fitness World of Jackson,* 32 B.R. 509 (Bankr.

---

**2.** The relevant portion of Section 5 of the MFIL is as follows:

> A person shall not, in connection with the filing, offer, sale, or purchase of any franchise, directly or indirectly:
> (a) Employ any device, scheme, or artifice to defraud.
> (b) Make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.
> (c) Engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.
> M.C.L.A. 445.1505.

**3.** The relevant portion of Section 8 of the MFIL is as follows:

> (1) A franchise shall not be sold in this state without first providing to the prospective franchisee, at least 10 business days before the execution by the prospective franchisee of any binding franchise or other agreement or at least 10 business days before the receipt of any consideration, whichever occurs first, a copy of the disclosure statement described in subsection (2), the notice described in subsection (3), and a copy of all proposed agreements relating to the sale of the franchise.

M.C.L.A. 445.1508(1).

**4.** The relevant portion of Section 31 of the MFIL is as follows:

> (1) A person who offers or sells a franchise in violation of section [445.1505 or 445.1508], is liable to the person purchasing the franchise for damages or rescission. . . .

M.C.L.A. 445.1531(1) (West Supp.1996).

**5.** Defendants' heavy reliance on *Investors Equity Group, Inc. v. Universal Symetrics Corp.,* 53 F.3d 159 (6th Cir.1995) during oral arguments is misplaced. The Court of Appeals addressed the question of whether a party who violates the Michigan Uniform Securities Act is allowed to invoke an equitable defense for a *de minimus* violation of the Act. However, the Court recognized the equitable defense of *in pari delicto* where a party may be denied the remedy of rescission due to an unconscionable delay on that party's part in seeking rescission. *Id.* at 162. In a dissenting opinion, Judge Nelson stated that a party who is generally aware of filing requirements yet "hedges its bet" by waiting to make its rescission demand, in effect may have sufficiently acquiesced to the violation thus barring the party from rescinding the agreement. *Id.* at 163 (Nelson, J., dissenting). The majority did not disagree with Judge Nelson's analysis on this point.

M.D.Tenn.1983), the court interpreted Michigan law when determining whether or not a franchisee had a right to rescind a franchise agreement. The court stated:

> Defendants' assertions are wholly untenable. Under Michigan law, the party seeking rescission of a contract must prove three elements: (1) a seasonable assertion of the rescission right; (2) tender of the consideration and benefits received; and, (3) demand for repayment of any price paid. *See Mesh v. Citrin,* 299 Mich. 527, 300 N.W. 870, 872 (1941). The party seeking rescission must first return the other party to the pre-contract status quo, *McIntosh v. Fixel,* 297 Mich. 331, 297 N.W. 512, 518 (1941), and rescission is not available to a party who has failed to make payments required by a contract and is thus in default. *Hafner v. A.J. Stuart Land Co.,* 246 Mich. 465, 224 N.W. 630, 631 (1929).

*Id.* at 521. The defendants in *Dynamic Enterprises* argued that they were entitled to avoid liability by demanding rescission. *Id.* at 521. However, the court in *Dynamic Enterprises* held that the defendants waived their right to rescind the franchise agreement by continuing to operate the franchises and use the plaintiff's trade name with knowledge of the MFIL violation. *Id.* at 523. In addition, the court found that the defendants had not tendered to the plaintiff the consideration and benefits received pursuant to the agreement, had not suggested how the return of all benefits and reinstatement of precontract status quo would be possible, and had not demonstrated an ability or willingness to do so. *Id.* The court went on to say: "defendants herein seek equity but come into court with unclean hands—defendants are unquestionably in breach of the very agreement they now wish to rescind." *Id.* Thus, when the franchisee in *Dynamic Enterprises* tried to use the franchisor's technical non-compliance with the MFIL as a justification to breach the franchise agreement, he threw away his right to sue for rescission and he brought upon himself a suit for damages. M. Stuart Sutherland, *The Risks Associated with Franchise Noncompliance,* 42 Bus.Law. 369, 397 n. 58 (1987). As the Maryland Court of Appeals stated: "[Franchisees] may not rely on illegality or invalidity where the doing of that said to be forbidden may reasonably be made legal and possible through administrative or judicial action." *Bagel Enters. v. Baskin & Sears,* 56 Md.App. 184, 199, 467 A.2d 533, 541 (1983) (quoting *McNally v. Moser,* 210 Md. 127, 138, 122 A.2d 555, 561 (1956), *cert. denied,* 299 Md. 136, 472 A.2d 999 (1984)). *See also Fargo Biltmore Motor Hotel Corp. v. Best W. Int'l, Inc.,* 563 F.Supp. 1022, 1027 (D.N.D.1983), *aff'd in part,* 742 F.2d 459 (reaching the same conclusion as *Bagel Enters.,* but the Eighth Circuit did not address the waiver issue). If a franchisor can allege nothing more than a technical violation of a franchise statute, then he will not be able "to walk away from his franchise agreement or pretend it had never existed and expect impunity for his action." Sutherland, *supra* at 384.

Similar to the defendants in *Dynamic Enterprises,* defendants in the case now before the Court claim that they are entitled to rescission based on plaintiff's alleged violations of the MFIL. However, although plaintiff provided the defendants with an Offering Circular seven days prior to the signing of the Franchise Agreement rather than the required ten days, an Offering Circular was provided to defendants. In addition, even if plaintiff's representative had made an "earnings claim" in violation of the MFIL, defendants knew the actual profits that the franchise provided. In fact, defendants entered into a second Franchise Agreement in 1993. However, defendants did not notify plaintiff of their rescission until they had reaped the benefits of the successful franchises for two years. Moreover, defendants continually defaulted on the royalty payments due plaintiff. Not until plaintiff notified defendants of its intent to terminate did defendants attempt to rescind the Franchise Agreements. Thus, defendants failed to make a seasonable assertion of their right to rescind. Moreover, defendants never tendered to the plaintiff the consideration and benefits they received by virtue of the Franchise Agreement. Regardless, defendants were in default at the time they demanded rescission; thus, rescission is not an available remedy.

This Court finds that defendants violated Section 43(a) of the Lanham Act by continuing to use the "Two Men and a Truck" name and mark after the Franchise Agreements were lawfully terminated. Additionally, this Court finds that defendants were not entitled to rescind, and did not rescind, the Franchise Agreements. Accordingly, this Court finds that there is no genuine issue of material fact that defendants are in violation of Section 43(a) of the Lanham Act or the unfair competition laws of Michigan and Indiana. Therefore, summary judgment is granted in favor of plaintiff against defendants on Counts I and II of the Complaint.

### 2. *Defendants' Request for Declaratory Judgment*

■ Defendants requested a declaratory judgment pursuant to 28 U.S.C. § 2201, from this Court to declare plaintiff's "Two Men and a Truck" name and mark invalid. However, as this Court noted in its Opinion and Order for Preliminary Injunction, the defendants are estopped from challenging plaintiff's ownership of the "Two Men and a Truck" name and mark due to defendants acknowledgment in the Franchise Agreements that plaintiff owns its "Two Men and a Truck" name and mark. *Two Men and a Truck/Int'l Inc. v. Two Men and a Truck/Kalamazoo, Inc.*, No. 5:94–CV–162, 1995 WL 549278 at *4. *See also MWS Wire Indus., Inc. v. California Fine Wire Co.*, 797 F.2d 799 (9th Cir.1986) (finding that defendant could have challenged the validity of the contested trademark prior to entering into agreement but now is estopped from doing so); *Beer Nuts, Inc. v. King Nut Co.*, 477 F.2d 326 (6th Cir.1973) (determining that King Nut Company is precluded from contesting the validity of a trademark due to contract), *cert. denied*, 414 U.S. 858, 94 S.Ct. 66, 38 L.Ed.2d 108 (1973); *E.F. Prichard v. Consumers Brewing Co.*, 136 F.2d 512, 521 (6th Cir.1943), *cert. denied*, 321 U.S. 763, 64 S.Ct. 486, 88 L.Ed. 1060 (1944) (finding that

defendant estopped from contesting plaintiff's right to name and mark); *Long John Silver's, Inc. v. Washington Franchise, Inc.*, 1980 WL 30249, 209 USPQ 146 (E.D.Va. June 24, 1980) (holding that defendant was estopped from challenging plaintiff's ownership of marks because Defendant acknowledged mark in franchise agreements).

Defendants entered into valid franchise agreements acknowledging the fact that plaintiff owned the "Two Men and a Truck" name and mark; thus, defendants are estopped from claiming that the plaintiff's name and mark are invalid. Defendants argue that if the Franchise Agreements were rescinded or if plaintiff breached the Franchise Agreements, then defendants cannot be estopped by words in the Franchise Agreements because they are not binding, either due to rescission or due to breach. First of all, as discussed earlier, the Franchise Agreements were not rescinded by defendants and were lawfully terminated by plaintiff because defendants failed to pay royalties and advertising fees and file monthly sales reports. Secondly, defendants are estopped from claiming that plaintiffs name and mark are invalid. Defendants signed the Franchise Agreements acknowledging that plaintiff owned the "Two Men and a Truck" name and mark and acted at all times like a franchisee. Prior to the Preliminary Injunction Order, defendants benefitted from the Franchise Agreements and desired continued benefit from the agreements, yet did not want to pay for the use of the "Two Men and a Truck" name and mark. Therefore, this Court rejects defendants' request for a declaratory judgment.

### 3. *State Claims*

■ The remainder of plaintiff's claims and the remainder of defendants' counterclaims will be dismissed pursuant to 28 U.S.C. § 1367(c).[6] As noted by the Supreme

---

**6.** Section 1367(c) provides that:

The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

Court in *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966):

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.

*Id.* (footnote omitted). Under the Judicial Improvements Act of 1990, 28 U.S.C. § 1367(c), a district court's exercise of supplemental jurisdiction is discretionary. *Eubanks v. Gerwen,* 40 F.3d 1157, 1161 (11th Cir.1994). *See also Diven v. Amalgamated Transit Union Int'l and Local 689,* 38 F.3d 598, 601 (D.C.Cir.1994) (pointing out that a determination of whether a state claim "substantially predominates" or if a state claim is "novel or complex" is not a mechanistic analysis); *Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir.1993) (courts should balance the interests of judicial economy and multiplicity of litigation with needlessly deciding state law issues) (citing *Aschinger v. Columbus Showcase Co.,* 934 F.2d 1402, 1412 (6th Cir.1991)).

In addition, " 'when the federal-law claims have dropped out of the lawsuit in its early stages [such as through summary judgment], and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.' " *Eubanks,* 40 F.3d at 1161–62 (citing *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988) (footnote omitted)).

Under 28 U.S.C. § 1367(c)(1), the court may decline to exercise supplemental jurisdiction where a case raises a novel or complex issue of state law. *See, e.g. Anglemyer v. Hamilton County Hosp.,* 58 F.3d 533, 541 (10th Cir.1995) (determining that Kansas courts are the appropriate forum to decide violations of the Kansas Risk Management Act); *Borges v. City of West Palm Beach,* 858 F.Supp. 174, 177 (S.D.Fla.1993) (stating that the legal and policy implications involved in the application of a Florida state court case are exactly those that Section 1367(c)(1)

allows the district court to decline to adjudicate); *St. George v. Mak,* 842 F.Supp. 625, 632 (D.Conn.1993) (holding that the court should abstain from deciding state claims that raise an undecided and disputed issue of state law).

In the case now before the Court, nothing has been pled, nor has anything occurred, which would cause this federal court to depart from the general rule in favor of addressing the state claims. The merits of the federal claims in this case have now been determined through summary judgment, making this case suitable for dismissal. Additionally, the remaining claims consist of state common law claims and state statutory claims. Many of the state claims involve novel issues of franchise law that require a unique interpretation by the Michigan and Indiana courts, making dismissal appropriate under Section 1367(c)(1). Therefore, the remainder of plaintiff's claims against defendants will be dismissed. Furthermore, the remainder of defendants' counterclaims will be dismissed.

### *Conclusion*

For the foregoing reasons, plaintiff's motion for summary judgment on Counts I and II of plaintiff's Complaint and on defendants' counterclaim for declaratory judgment will be GRANTED. Furthermore, plaintiffs remaining claims and defendants' remaining counterclaims will be dismissed in their entirety without prejudice pursuant to 28 U.S.C. § 1367.

An Order consistent with this Opinion will be entered.

### *ORDER*

In accordance with the Opinion entered this date,

IT IS HEREBY ORDERED that plaintiff's motion for partial summary judgment (docket no. 100) is GRANTED IN PART. Plaintiff's motion for summary judgment on Counts I and II are granted. In addition, defendants' counterclaim for declaratory

---

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C.S. § 1367(c) (Law.Co-op.Supp.1996).

**510**

judgment (Count 6) is dismissed with prejudice.

**IT IS FURTHER ORDERED** that within twenty-one (21) days of this Order, plaintiff shall submit to this Court and serve upon defendants a proposed permanent injunction. Defendant shall have fourteen (14) days to file its objections to the proposed permanent injunction.

**IT IS FURTHER ORDERED** that within twenty-one (21) days of this Order plaintiff shall submit to this Court and serve upon defendant a written computation of damages in the form and containing the information set forth in Fed.R.Civ.P. 26(a)(1)(C). This compilation shall be limited to the damages plaintiff sustained because of defendants' unfair competition. This Court will set plaintiff's claim for trial on the issue of damages only.

**IT IS FURTHER ORDERED** that the remainder of plaintiff's claims (Counts III, IV, V, VI, VII and VIII) and the remainder of defendants' counterclaims (Counts 1, 2, 3, 4, 5, 7, 8 and 9) are dismissed without prejudice pursuant to 28 U.S.C. § 1367.