NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0080n.06

Case No. 16-1804

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

BRIAN LOFGREN,

    Plaintiff-Appellee,

v.

AIRTRONA CANADA,

    Defendant,

SAM BARBERIO,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Jan 27, 2017
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

Before: MERRITT, MOORE, and STRANCH, Circuit Judges.

**MERRITT, Circuit Judge**. This Michigan diversity case presents the question of whether the plaintiff, Brian Lofgren, and the defendants, AirTrona Canada and Salvatore ("Sam") Barberio, made a franchise agreement under Section 2 of the Michigan Franchise Investment Law[1], and if so, whether the plaintiff, the franchisee, is entitled to rescind the purported agreement and seek restitution under Sections 8 and 31 of the Michigan statute because the franchisor did not provide the franchisee with the required "disclosure statement."[2]

---

[1] Such a franchise agreement is broadly defined as granting the right to sell "goods or services under a marketing plan . . . prescribed . . . by a franchisor" and associated with the franchisor's "trademark" or other "commercial symbol" in exchange for paying "a franchise fee." Mich. Comp. Laws § 445.1502(3).

[2] Section 8 of the Michigan Franchise Statute conditions the sale of a "franchise" upon the "prospective franchisee" receiving a "disclosure statement" with a large amount of information about the franchisor's business and history including financial statements and a detailed list of obligations. Mich. Comp. Laws § 445.1508. Section 31 then

The parties agree that no disclosure statement of any kind was provided by franchisor AirTrona Canada or its agent, Barberio. The district court found Barberio, as an employee of AirTrona Canada, did attempt to sell a franchise business to the plaintiff for sanitizing automobiles at car dealerships, that the purported agreement should be rescinded because of the absence of a disclosure statement, and that plaintiff should recover payments in connection with the franchise sale, including attorney's fees. We affirm.

## I. Background

During the trial the district court observed that the quality of the evidence introduced by both parties served to complicate the case rather than simplify it. *Lofgren v. AirTrona Can.*, No. 2:13-CV-13622, 2016 U.S. Dist. LEXIS 62753 at *2 (E.D. Mich. Jan. 4, 2016). This court agrees. Keeping in mind that the most basic elements of the business relationship are in dispute, we will now attempt to summarize the underlying facts of the case.

This case involves two relevant corporate entities, defendant AirTrona Canada and its predecessor, AirTrona Green Technologies. Their precise relationship is unclear, but they appear to be alter-egos. AirTrona Green Technologies ceased operating approximately when AirTrona Canada started operating. Both companies engaged in deodorizing used cars. AirTrona Canada sent invoices with AirTrona Green Technology's logo. And there was a significant overlap of individuals involved with the two entities, including defendant Barberio.

Barberio, as a representative of AirTrona Green Technologies, introduced the plaintiff to the business of deodorizing vehicles at car dealerships. In September 2009 the plaintiff bought a Michigan franchise from Barberio and AirTrona Green Technologies for $25,000 Canadian

---

provides for the "rescission" of the purported franchise agreement as well as restitution "damages" if a proper "disclosure statement" is not provided by the franchisor to the franchisee. Mich. Comp. Laws §445.1531(1).

dollars. AirTrona Green Technologies provided the plaintiff with the equipment necessary to start his franchise, and the plaintiff ran the franchise for two years.

In January 2010, defendant AirTrona Canada formed. AirTrona Canada's business differed in some respects from Green Technologies, most notably in that AirTrona Canada used a newer "sanitization process" to clean vehicles instead of the older "ozone process" employed by AirTrona Green Technologies. The "ozone process" reduced the odors in used-cars by pumping ozone into the vehicles, while the new "sanitization process" offered by AirTrona Canada actually cleaned the inside of the cars and eliminated the source of the smells.

In the summer of 2011 after the plaintiff had run the franchise he bought from AirTrona Green Technologies for 2 years, Barberio, now representing AirTrona Canada, presented the plaintiff with a new business plan. The parties entered into an agreement to upgrade the plaintiff's old franchise to the new "sanitization process" offered by AirTrona Canada. During the negotiations, Barberio promised to secure three full-line automobile dealerships that would all agree to have their vehicles serviced by the plaintiff, creating a steady source of business. Barberio stated that the plaintiff would earn profits of $3,000-6,000 a month. Relying on these statements, the plaintiff agreed to purchase what he calls an "upgraded franchise" and that Barberio characterizes as "upgraded equipment."

In July 2011 AirTrona Canada sent the plaintiff an invoice which stated that for $35,000 Canadian dollars, the plaintiff's company would receive "1 *Franchise* Michigan Location" (emphasis added). The invoice identified Barberio as a salesperson on the deal. In August 2011 the plaintiff received a second invoice for $28,148 with a list of equipment including: two ozone generators, an air compressor, a gas generator, a carpet extractor, AirTrona trademark vehicle wrapping, and an accessory kit. This invoice also stated, "Direct All Inquiries

To: Sam Barberio" and, "Make Cheques Payable to AirTrona Canada." Both invoices were marked with the AirTrona Green Technologies logo. The plaintiff paid $15,000 Canadian dollars directly to a third party manufacturer, Simpson Environmental, and wired $20,000 Canadian dollars to AirTrona Canada. As part of the agreement the plaintiff also sent AirTrona Canada old equipment from his previous franchise, which he values at $5,000 (U.S.).

In February 2013, the plaintiff took steps to close down his struggling Michigan business. The plaintiff blames the failure of the business on Barberio's unfulfilled promise made in 2011. Barberio claims that the failure was due to the plaintiff's lack of personal attention to the business. In June 2013 after negotiations to sell the business back to Barberio had failed, the plaintiff sent letters to AirTrona Canada, claiming that "AirTrona International" had violated the Michigan Franchise Investment Law. In August 2013 the plaintiff filed suit against AirTrona Canada and Barberio[3].

The district court held a bench trial on the claims against Barberio only, after entering a default against AirTrona Canada. At trial the court found that as an employee of AirTrona Canada Barberio had violated the Michigan Franchise Investment Law, and that rescission was the proper remedy. *See* Mich. Comp. Laws § 445.1531. In accordance with the findings the court entered a judgment holding Barberio and AirTrona Canada jointly and severally liable to the plaintiff in the amount of $82,757.85, which included $36,935.72 in restitution and $45,822.13 in attorney's fees.

Barberio appeals both the district court's judgment and the denial of his Fed. R. Civ. P. 59(e) motion to amend the judgment, claiming: (1) Barberio and AirTrona Canada did not grant a new franchise to the plaintiff in 2011; (2) Barberio was not an employee of AirTrona Canada,

---

[3] Section 32 of the Michigan Franchise Investment Law holds "an employee of a person liable who materially aids in the act or transaction constituting the violation" of not providing the franchise disclosure form required by Section 8 liable for rescission. Mich. Comp. Laws § 445.1532

although if he was, he was shielded from liability by the franchise law's safe harbor provision; and (3) the district court's rescission remedy was improper.

## II. Analysis

Following a bench trial we review the district court's factual findings for clear error and its conclusions of law de novo. *Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640, 643-44 (6th Cir. 2013). Reviewing the district court's factual findings for clear error, "[we] must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6). Under *Erie* doctrine, this federal court sitting in diversity will apply Michigan state substantive law and federal procedural law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

### A. Did AirTrona Canada Grant the Plaintiff a Franchise?

At trial the district court found that the negotiation between the plaintiff and Barberio in the summer of 2011 was for a franchise with AirTrona Canada under Michigan law (see footnotes 1 and 2 for a summary of the relevant provisions of Michigan's franchise statute). Barberio contests the finding, arguing that in 2010 AirTrona Canada "seamlessly took over" AirTrona Green Technology's existing franchise relationship with the plaintiff and that in July 2011 the plaintiff merely expanded his existing franchise by buying new equipment.

We agree with the district court that the plaintiff purchased a new franchise from Barberio and AirTrona Canada in the summer of 2011. The business relationship between AirTrona Canada and the plaintiff had not yet formalized prior to the summer 2011 transaction. The "sanitization process" franchise the plaintiff bought in 2011 is materially different from its "ozone process" predecessor in both function and relation to a new corporate franchisor. Moreover, an invoice that AirTrona Canada sent to the plaintiff in August 2011 explicitly states that the agreement was for "1 *Franchise* Michigan location" (emphasis added). The plaintiff's

operation of his business during 2010 was simply a continuation of his old "ozone process" franchise, and did not preclude his being granted a new "sanitization process" franchise by AirTrona Canada. The district court did not err in finding the summer 2011 transaction was a deal for a new franchise.

Barberio's argument that the word "prescribed"[4] within the Michigan franchise statute creates a franchisee "adherence requirement" that was absent from the July 2011 transaction is unconvincing. Barberio argues that the plaintiff ran his Michigan business independently from AirTrona Canada, so AirTrona Canada did not "prescribe" a marketing plan as required by the statute. The plaintiff claims this argument was waived since Barberio did not contest the meaning of the word "prescribed" until his post-judgment motion. Whether or not Barberio's argument is waived, it still fails. This court reads, "prescribed by a franchisor" in § 455.1502(3)(a) not to mandate a complete sacrifice of independence by the franchisee, but only to require general adherence to the business plan of the franchisor. This interpretation adheres to the Michigan Administrative Code provision relied on by the district court at trial:

> The presence of any of these factors, among others, indicates that a marketing plan or system is prescribed in substantial part by the franchisor: . . . Representations by . . . the franchisor that the franchisor aid or assist the franchisee in training or in obtaining locations or facilities for operation of the franchisee's business, or in marketing the franchisor's product or service.

Mich. Admin. Code R. 445.101(4)(c)(iv). The plaintiff was allowed to run his Michigan franchise, for better or worse, with relative autonomy over day-to-day operations. However, his franchise was reliant on AirTrona Canada and Barberio for training, obtaining business relationships that could sustain the upgraded business model, business equipment and uniforms, and aspects of promoting the AirTrona name. *See Chem-Tek, Inc v. General Motors Corp.*,

---

[4] Under the Michigan Franchise Investment Law, a "franchise" requires that a franchisee be granted the right to engage in business "under a marketing plan or system *prescribed* in substantial part by a franchisor." Mich. Comp. Laws § 445.1502(3)(a) (emphasis added).

816 F. Supp. 123, 129 (D. Conn. 1993) (interpreting a similar provision of the Connecticut Franchise Act). The plaintiff also issued regular reports of his business to the franchisor. In a number of ways the plaintiff's business was reliant on the Canadian operation to survive. This reliance gets to the heart of the Michigan Franchise Investment Law, whose purpose is to "address a perceived inequality of bargaining power among the parties to the franchise agreement by providing franchisees with a variety of rights designed to prevent abuses." *Geib v. Amoco Oil Co.*, 29 F.3d 1050, 1056 (6th Cir. 1994). AirTrona Canada's relationship to the plaintiff's upgraded business had multiple "prescriptions" tying them together.

Finally Barberio argues that the money the plaintiff paid to AirTrona Canada in the July 2011 transaction did not include a franchise fee, and was only for sanitization process equipment. Barberio is correct to question the impracticality of requiring franchisors to generate new disclosure documents whenever they add a product or service. But in the present case it appears the plaintiff was paying for more than just the equipment to offer a new service. The plaintiff was charged for more than the value of the equipment he received, and Barberio cannot account for the extra cost. The district court found that the extra money paid by the plaintiff amounted to a franchise fee. That finding does not rise to the level of clear error.

Barberio offers *Kenaya Wireless, Inc. v. SSMJ, L.L.C.,* No. 281649, 2009 WL 763496 (Mich. Ct. App. Mar. 24, 2009) as precedent that selling equipment at a marked up price does not "in and of itself create a franchise fee." But *Kenaya Wireless, Inc.* is distinguishable since there was no evidence in that case to establish that the potential franchisee paid "in excess of a 'fair payment for goods purchased at a comparable level of distribution.'" 2009 WL 763496 at *2 (quoting *Hamade v. Sunoco, Inc.*, 721 N.W.2d 233, 242 n.8 (Mich. Ct. App. 2006)). In the present case the district court found that of the $20,000 Canadian dollars that the plaintiff paid to

AirTrona Canada, $6,852 is unaccounted for when the value of the equipment is deducted.[5] Barberio offers no explanation for the discrepancy other than by dismissing the court's calculation as a "random number generated by a math equation." Unfortunately for Barberio, math is the tool we use to calculate.

The presence of a franchise fee in the payment is further supported by the August 2011 invoice for the transaction describing the payment being for "1 Franchise Michigan Location." This document and the corresponding customs invoice that AirTrona Canada sent to the plaintiff are probative, although admittedly not dispositive, of the agreement between the parties. *Cf. Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 910 (6th Cir. 1999). Still, it appears a franchise is what was bought.

### B. Was Barberio an Employee of AirTrona Canada?

Barberio maintained at trial that he was an independent contractor working as a consultant for AirTrona Canada, and therefore he could not be held liable as an employee under Section 32 of the franchise law. On appeal, Barberio now argues that the district court applied the incorrect test in finding him to be an employee, asserting that "[employee] has a very specific meaning, incorporating concepts of payment, authority and taxation, among other things." Barberio also emphasizes that AirTrona Canada did not maintain sufficient control over his method of his work for him to be properly considered an employee. While the district court found these arguments to be waived when Barberio raised them in his post-judgment motion, they are technically close to the arguments Barberio made at trial concerning his employment status, and we will address them.

---

[5] The July 2011 invoice that AirTrona Canada sent to the plaintiff stated the transaction as $35,000 Canadian dollars for "1 Franchise Michigan Location." A second invoice in August 2011 charged $28,148 Canadian dollars for a list of equipment for the new franchise, including two new generators. The difference between the equipment price and the final price paid is the $6,852 Canadian dollars that makes up the franchise fee. The plaintiff sent $15,000 of the cost directly to the third party generator manufacturer, and paid the remaining $20,000 directly to AirTrona.

Section 32 of the Michigan Franchise Investment Law outlines the statute's scope of liability.[6]  Mich. Comp. Laws § 445.1532.  The district court found Barberio to be "an *employee* of a person liable who materially aids in the act or transaction constituting the violation" of not providing the franchise disclosure form required by Section 8.  *Id*. (emphasis added).  Barberio disputes this "employee" designation, claiming to be an "independent contractor" or "consultant" not liable under the statute.

Barberio introduces precedent for a test that Michigan courts have recognized as a useful methodology for determining whether a person is an employee – by looking at the totality of the circumstances surrounding economic realities of the employment relationship.  *See Buckley v. Professional Plaza Clinic Corp.*, 761 N.W.2d 284, 290 (Mich. Ct. App. 2008).  The Michigan Supreme Court has found this broad "economic realities" test instructive not only in the workers' compensation field, where it is most often applied, but also in any area where an employee-employer relation might exist.  *Coblentz v. City of Novi*, 719 N.W.2d 73, 85 (Mich. 2006).

When considering the totality of the circumstances in the present case – including: Barberio's testimony that the President of AirTrona Canada had named him CEO/COO, Barberio's admission that he gave AirTrona Canada advice on which rules franchisees would follow and the customer's business requirements for growth and investment, his holding himself out as an employee to the plaintiff, his active involvement in the equipment sales for AirTrona Canada, his receipt of weekly sales reports from the plaintiff, his negotiation for the franchises with the plaintiff, his personal promises regarding the obligations of AirTrona Canada to its franchisee, and his negotiations with the plaintiff on behalf of AirTrona Canada regarding the

---

[6] "*. . . [A]n employee of a person so liable who materially aids in the act or transaction constituting the violation*, is also liable jointly and severally with and to the same extent as the person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist."  Mich. Comp. Laws § 445.1532 (emphasis added).

current dispute – the evidence supports the finding that Barberio was an employee of AirTrona Canada.

Barberio does not qualify for the employee safe harbor provision within Section 32 of the franchise law. Barberio fails to show why he "had no knowledge of or reasonable grounds to believe in the existence of the facts" of the franchise transaction of which he played a fundamental part. Mich. Comp. Laws § 445.1532. The evidence at trial showed that Barberio, as the primary representative of AirTrona Canada, was intimately involved in the franchise negotiation with the plaintiff. It is irrelevant whether Barberio was "familiar with the Franchise Act" or eventually "did the pricing" for AirTrona Canada. Barberio had reasonable grounds to believe that he was negotiating the sale of a franchise, and that the plaintiff would be charged for the franchise. In Barberio's own words, the 2011 transaction was "his" sale, and he cannot plead ignorance of the law to shield himself from liability.

### C. Was the District Court Remedy Proper?

Barberio claims that since he was only found to have committed only a technical violation of the franchise law, the district court incorrectly allowed for rescission of the agreement. He maintains that rescission is a proper remedy only when a franchise law violation directly causes financial losses, such as in fraud cases.

Rescission of a contract terminates it with restitution and restores the parties to their original status. *Mazur v. Young*, 507 F.3d 1013, 1020 n.2 (6th Cir. 2007). As the district court observed, the plain language of the franchise statute explicitly allows for rescission in this case. Section 31(1) of the franchise law sets out the remedies available when a person violates Section 8: "A person who offers or sells a franchise in violation of section 5 or 8 is liable to the person purchasing the franchise for damages or rescission." Mich. Comp. Laws § 445.1531(1). If a

franchisor violates Section 8, the franchisee may be entitled to rescission. The statute has no reference to a fraud requirement or a requirement that the Section 8 violation be the direct cause of the franchise's losses. Barberio is correct that the plaintiff's financial distress was likely not caused by the absence of a franchise disclosure form, but he does not acknowledge that there is no such causal requirement in the statute.

It is true that a Michigan court has refused to grant rescission where a Section 8 violation occurred but the equities of the case tipped in favor of the franchisor. In *Two Men & a Truck/Int'l Inc. v. Two Men & a Truck/Kalamazoo, Inc.,* a district court found that rescission was not an available remedy, despite a franchisor's technical violation of the franchise law. 949 F. Supp. 500, 506-07 (W.D. Mich. 1996). However, the present case is distinguishable in a number of ways. The court in *Two Men & a Truck/Int'l Inc.* found that the franchisee had acted in bad faith by failing to pay royalties and fees and by failing to file monthly sales reports, giving the franchisor good cause to terminate the agreement. *Id.* at 505-06. Under Michigan law, rescission is unavailable to a party who has failed to make payments required by a contract and is therefore in default. *Dynamic Enterprises, Inc. v. Fitness World of Jackson*, *Inc.*, 32 B.R. 509, 522 (M.D. Tenn. 1983). The franchisee in *Two Men & a Truck/Int'l Inc.* materially violated the franchise agreement, unlike the plaintiff in the present case, who fulfilled his side of the bargain while maintaining his franchise. *See* 949 F. Supp. at 505-06. Barberio presents no evidence that the plaintiff acted in bad faith or rescinded the agreement in an untimely manner. *See Heidtman Steel Products, Inc. v. Compuware Corp.*, 178 F. Supp. 2d 862, 864 (N.D. Ohio 2001).

The cases are also distinguished by the nature of the franchisor's Section 8 violation. In *Two Men & a Truck/Int'l Inc.*, the franchisor provided the disclosure a few days late, which appeared to be an oversight. But the disclosure was still sent seven days before the signing,

which fulfilled the spirit of the law. 949 F. Supp. at 506. In the present case, the plaintiff was never provided with a disclosure form at all. AirTrona Canada's Section 8 violation does not appear to have been a mere oversight, and was the predictable result of the informality with which AirTrona ran its franchising business. The court is not compelled to work around the plain meaning of the statute, and the district court did not err in ordering rescission.

Barberio also argues that the final award of $82,757.85 (U.S.) was too high. In calculating the restitution, the district court took the amount of money the plaintiff paid for the franchise and equipment, subtracted the value of the equipment he received but did not return to AirTrona, and added the "12% per year" interest provided by the franchise law. Mich. Comp. Laws § 445.1531. First, Barberio claims that the court's determination of $36,935.72 (U.S.) for restitution was too high because he should not be held liable as an employee of AirTrona Canada for the money that the plaintiff paid to a third party generator manufacturer, Simpson Environmental. Finally, he claims that it was improper for the district court to have awarded $45,822.13 (U.S.) in attorney's fees.

In the order denying Barberio's Fed. R. Civ. P. 59(e) motion the district court explained why the money paid directly to the manufacturer was part of its restitution calculation. The evidence at trial, and especially the August 2011 invoice, suggests that it was AirTrona Canada's responsibility to deliver the generators to the plaintiff. In a similar vein, Barberio claims that he personally should not be held liable for the undelivered generator since he had no control over the decision not to deliver the generator to the plaintiff. This argument fails for the same reason Barberio's argument that he was not an employee of AirTrona Canada fails. Barberio made the deal with the plaintiff. The August 11 invoice for the generator even stated

that any inquiries be directed to "Sam Barberio." Just as AirTrona Canada cannot hide behind a third party, Barberio cannot hide behind AirTrona Canada.

The district court also did not err in its issuance of attorney's fees for the plaintiff. The franchise law provides for "reasonable attorney's fees and court costs" for violations of Section 8. Mich. Comp. Laws § 445.1531. Barberio's criticism that a portion of the attorney's fees were spent litigating against only AirTrona Canada ignores the fact that both co-defendants are jointly and severally liable for the same violation. Barberio is "an employee of a person so liable who materially aids in the act or transaction constituting the violation, [who] is also liable jointly and severally with and to the same extent" as AirTrona Canada. Mich. Comp. Laws § 445.1532. This court agrees with the plaintiff that joint and several liability is especially appropriate in the context of the informal corporate entities at issue. Barberio's argument that attorney's fees should have been determined at post-trial proceedings is also unconvincing, especially given the parties' agreement to address the issue of the remedy during the bench trial and Barberio's apparent silence on the issue at the time.

Barberio also separately challenges the denial of his post-judgment motion, claiming the district court should not have deemed some of his arguments waived. As all of Barberio's claims fail on the merits, the lower court did not err in denying the post-judgment motion. Finally, we decline to grant the plaintiff's request to remand to the district court to award attorney's fees for the appellate proceedings.

The judgment of the district court is **AFFIRMED**.