**K. Raymond HAMPTON, Appellant,**

v.

**Stephen MORGAN and Joann Morgan, Appellees.**

No. 48A02–9502–CV–69.

Court of Appeals of Indiana.

July 31, 1995.

Arvin R. Foland, Arvin R. Foland & Associates, Noblesville, for appellant.

Richard S. Pitts, E. Scott Treadway, Lowe Gray Steele & Hoffman, Indianapolis, for appellees.

## OPINION

FRIEDLANDER, Judge.

K. Raymond Hampton appeals the denial of his motion for a hearing on his request for damages pursuant to Trial Rule 65.

We reverse.

The facts favorable to the judgment are that Hampton was the developer of a real estate subdivision known as Sylvan Woods. Improvements in Sylvan Woods were to be made consistent with certain restrictions and covenants, including "a 40 foot maximum set back within which all residences must be built." *Record* at 34. On April 23, 1987, Stephen and Joann Morgan purchased a lot in Sylvan Woods and built a house. Fred Forst subsequently purchased the lot next to the Morgans and applied to the Architectural Control Committee (the Committee) for a variance extending the 40–foot setback limit. The Committee, of which Hampton was a member, granted the variance and extended the setback limit to 120 feet. Forst began clearing the forest in an area approximately 120–140 feet from the street.

On April 11, 1991, the Morgans filed a Complaint for Damages and Injunction against Forst and Hampton, seeking an order enjoining Forst from further construction or clearing of woods in contravention of the original 40–foot setback restriction and an order directing Forst to replace all trees and grass that had been removed from the property beyond the 40–foot setback line. The court granted a temporary restraining

order (TRO) directing Forst to cease construction and clearing activities until the matter was settled in court. On May 20, 1991, following an April 19 hearing, the court granted a preliminary injunction in favor of the Morgans which extended the terms of the April 11 TRO. In a May 16, 1994 ruling, the trial court ultimately ruled against the Morgans on their complaint and injunction, concluding that "the Morgans fail[ed] in all respects of their claims against Hampton" and that "the Morgans wrongfully pursued a preliminary injunction which was later dissolved." *Record* at 196.

On August 3, 1992, Hampton filed a request for a hearing on damages pursuant to Trial Rule 65(C), which was denied on August 13, 1992.[1] T.R. 65(C) provides:

"**(C) Security.** No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained".

On August 31, 1994, Hampton again petitioned for T.R. 65(C) damages and requested a hearing on the motion. On September 13, 1994, the Morgans filed an objection to the request for a hearing on damages. Hampton's motion for a hearing was denied on September 26, 1994. On October 24, 1994, Hampton filed a Motion to Correct Error, challenging the denial of his motion for a hearing on damages. Hampton appeals the denial of the October 24 motion.

■ T.R. 65 provides that parties may recover costs and damages resulting from a wrongful injunction. Where, as here, a preliminary injunction is dissolved and is not replaced by a permanent injunction, "the enjoined party is generally entitled to compensation for damages he incurred." *Laux v. Chopin Land Assocs., Inc.* (1993), Ind.App., 615 N.E.2d 902, 905, *trans. denied.* The

basis for the denial of Hampton's motion for a damages hearing was not explained, although it may reasonably be assumed that the denial was premised upon a determination that Hampton did not suffer damages recoverable under T.R. 65(C). The Morgans contend that the judgment should be affirmed upon that basis.

■ This court has explained the nature of damages which are recoverable because of a wrongful injunction.

"In order to recover damages because of an injunction it must be shown that any damage sustained is the natural, actual, and proximate result of such injunction. The rule is stated in High on Injunctions (4th Ed.) § 1663, as follows: 'The liability on an injunction bond is limited to such damages as arise from the suspension or invasion of vested legal rights by the injunction. Speculative and remote damages are not properly allowable nor are those which are merely consequential, the limit being such damages as flow directly from the injunction as its immediate consequence.'" *United States Fidelity & Guaranty Co. v. State ex rel. Ogden* (1936), 104 Ind.App. 21, 5 N.E.2d 115, 117.

Hampton claims that he suffered two categories of damages which are recoverable pursuant to T.R. 65(C). On February 8, 1993, Hampton submitted an affidavit claiming lost sales:

"10. That in this day of consumerism, realtors all are under the onus of having to make full disclosure of having to do [sic] with the purchase/sale of real property with which they are dealing. Failure to do so could put a realtor at risk, should there be subsequent litigation concerning any transaction. Ever since April 11, 1991, your affiant has in the natural course of his business and in the spirit of ethical compliance with what is perceived as professionally expected (demanded) of him, made

---

1. T.R. 65(C) requires the posting of security by the party seeking an injunction in order to compensate a party which is wrongfully enjoined. In the instant case, the Morgans posted such a security bond and, upon the court's determination that the injunction was wrong, the bond was forfeited and Forst was awarded damages pursuant to T.R. 65.

disclosure to all cooperating brokers and prospective buyers as to the existence of this on-going lawsuit in regards to Sylvan Woods Subdivision. The result has been advertised to the Court in arguments by my counsel that since the initiation of this lawsuit by Plaintiffs, your affiant has been able [sic—presumably, Hampton meant *unable* ] to sell even one (1) lot to any prospective home builder! It is an actual fact of history and it is on the record. That is not to say that there have been no prospects for there have been from time to time serious prospects. But in all cases eventual sales/purchases of lots failed once disclosure of the facts of this lawsuit was made.

11. That your affiant was successful in making eight (8) lot sales in the twelve (12) months immediately proceeding [sic] the filing of this lawsuit. Your affiant had options on four (4) lots, all of which options were not exercised because of the prospective purchasers saying that they just did not want to get involved in the situation because of the pending litigation." *Record* at 173–74.

The Morgans argue that Hampton's lost sales claim is too speculative to be recoverable under the standard enunciated in *United States Fidelity & Guaranty Co.* The Morgans point out that "[p]rospective purchasers back away from lot sales for an infinite variety of reasons. Those decisions may or may not have had anything to do with the litigation; they may have much more to do with economics, aesthetics." Appellee's Brief at 9. The Morgans' argument in this regard is not entirely without merit. In order to recover damages for the wrongful injunction, Hampton must show, for example, that a particular lost sale was a direct result of the injunction (not just the lawsuit) and that the damages could not be mitigated, e.g., by a replacement buyer. Nevertheless, we cannot say as a matter of law that, given the opportunity, Hampton could not prove lost sales damages

in conformity with the *United States Fidelity & Guaranty Co.* standard.

■ Hampton also claims as damages legal fees he incurred in contesting the injunction. Legal fees incurred in defending against an injunction are recoverable. *Swan v. Timmons* (1881), 81 Ind. 243. The Morgans contend that Hampton's claim for attorney fees should be denied for two reasons: 1) a portion of the legal fees paid by Hampton was expended for reasons other than defending against the injunction; and 2) Hampton did not present evidence regarding the amount he spent defending against the injunction.

Morgan correctly asserts that, with regard to Hampton, the instant action involved more than defending against the injunction. In an action involving more than an injunction, a T.R. 65(C) damage award based upon attorney fees should be restricted to the fees necessarily incurred in defending against the injunction. *See Clevenger v. Goltry* (1924), 82 Ind.App. 110, 145 N.E. 332. The lack of evidence of record addressing specifically what portion of Hampton's attorney fees was incurred in defense of the injunction is not surprising in view of the fact that such evidence is customarily presented at a hearing on damages. Of course, such a hearing was not conducted in the instant case.

■ T.R. 65(C) authorizes payment of costs and damages incurred as a result of a wrongful injunction. We are unpersuaded by the argument that the lack of evidence of damages contained in the record is fatal to Hampton's right to a hearing. Mindful that the presentation of such evidence would be one of the primary purposes of a hearing on damages, we cannot justify the denial of the motion on grounds arguably resulting from said denial, that is, the lack of evidence of damages in the record. Hampton was at least nominally a party subjected to the Morgans' wrongful injunction and, pursuant to T.R. 65(C), was therefore entitled to damages incurred as a result of defending against the injunction. *Laux, supra.* We conclude that the trial court erred in denying Hampton's request for a hearing for the purpose of

presenting evidence and arguments relative to his claim for damages under T.R. 65(C).[2]

Judgment reversed.

SULLIVAN and KIRSCH, JJ., concur.

**2.** We express no opinion as to the merits of Hampton's arguments in support of his request for damages.