

I N T H E

# Court of Appeals of Indiana

City of Boonville,

*Appellant-Defendant,*



FILED

May 28 2025, 9:10 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

Mary Kay Anderson, James Kevin Miller,
and Chris K. Miller,

*Appellees-Plaintiffs.*

---

May 28, 2025

Court of Appeals Case No.
24A-PL-1905

Appeal from the
Warrick Circuit Court

The Honorable
J. August Straus, Special Judge

Trial Court Cause No.
87C01-2308-PL-1536

**Najam, Senior Judge.**

## Statement of the Case

[1] Mary Kay Anderson, James Kevin Miller, and Chris K. Miller (collectively, "the Landowners") filed a complaint seeking declaratory and injunctive relief and a motion for temporary restraining order ("TRO") against the City of Boonville ("Boonville"). The Landowners alleged that Boonville planned to commit a trespass by causing water from a privately owned detention basin to be discharged directly and unlawfully on to one or both of their properties. Boonville intended to, and eventually did, redirect water from an adjoining subdivision detention basin, ultimately depositing the water into a private ditch ("the Anderson-Miller private ditch") on the Landowners' properties.

[2] The Landowners obtained a TRO against Boonville, which was later dissolved. Much later, the trial court dismissed the Landowners' complaint under Trial Rule 12(B)(6). The Landowners then exercised their right under Trial Rule 12(B) and Trial Rule 15(A) and filed an Amended Complaint against Boonville. Meanwhile, Boonville filed a motion for an award of attorney's fees, costs, and damages ("the Fee Motion"). Boonville alleged that the orders dissolving the TRO and dismissing the Landowners' complaint "confirmed" that Boonville had been wrongfully restrained and, therefore, that Boonville was entitled to

recover damages pursuant to Indiana Trial Rule 65(C). *See* Appellant's Br. p. 19.

[3] The Millers, under Trial Rule 41(A)(1)(a), and then Anderson, under Trial Rule 41(A)(2), voluntarily dismissed their Amended Complaint. The trial court allowed the dismissals of the Amended Complaint without prejudice and without conditions. The court also denied Boonville's Fee Motion. Boonville contends that the Landowners should not have been allowed to voluntarily dismiss their Amended Complaint without also satisfying Boonville's Fee Motion for having been wrongfully restrained.

[4] The parties dispute the significance, operation, and effect of orders entered on November 16, 2023 and March 15, 2024 as well as the correctness of the final order entered on July 15, 2024. In the first order the court dissolved the TRO. In the second order the court granted Boonville's Trial Rule 12(B)(6) motion to dismiss the original complaint. In the third and final order the court granted Anderson's motion for voluntary dismissal, without prejudice, and denied Boonville's Fee Motion.

[5] Neither the dismissal of the TRO nor the Trial Rule 12(B)(6) dismissal of the original complaint finally and ultimately determined that the TRO was wrongfully issued. But Boonville requested and was denied a hearing on its Fee Motion to prove that it was wrongfully restrained and entitled to an award of damages, fees, and costs. Thus, we hold that the trial court did not abuse its discretion when it granted Anderson's motion for involuntary dismissal without

prejudice but that it erred when it denied Boonville's Fee Motion against the Landowners without a hearing. Consequently, we affirm in part, reverse in part, and remand with instructions.

## Issues

Boonville raises three issues on appeal which we consolidate and restate as:

> I. Whether the trial court abused its discretion when it granted Anderson's Motion for Voluntary Dismissal under Trial Rule 41(A)(2) without prejudice and without terms and conditions; and

> II. Whether the trial court abused its discretion when it failed to conduct a hearing and denied Boonville's Fee Motion against the Landowners under Trial Rule 65(C).

## Facts and Procedural History

### Background

The Landowners own properties in Boonville sharing a boundary line on the east side of the Anderson property and the west side of the Miller property. During wet weather events, water from land to the northeast drained south toward the Landowners' properties, accumulating in the Anderson-Miller private ditch on the common property line and causing severe flooding. In 2010, after the Landowners sought Boonville's assistance, Boonville informed the Landowners that theirs was a "private" ditch and remediation of the accumulating water was the Landowners' responsibility. At their sole and

considerable expense, the Andersons[1] improved the Anderson-Miller private ditch by deepening it, lining it with a concrete ribbon, and constructing a concrete retaining wall to direct the flow of the water away from their homes to alleviate the flooding. These actions greatly reduced the Landowners' flooding issues.

[8] Boonville later contacted the Millers seeking their permission to install a subsurface drainage pipe ("the Miller pipe") within an easement on the Miller's property. The easement runs from east to west near the Landowners' property line. The Miller pipe's construction, to which the Millers consented, served the purpose of replacing a preexisting depression, swale or ditch along the northeast corner of the Miller property, that received surface water runoff from the northeast.

[9] Moving forward to 2021, Autofish, LLC ("the Builder") acquired a previously undeveloped tract of land to build a subdivision to the north of and abutting the Landowners' properties. In addressing the surface water drainage issue on that property, the Builder proposed to install a detention basin near the Landowners' properties to capture the water, impound it in the detention basin, and ultimately deposit it into the Anderson-Miller private ditch. A drainage outflow pipe would extend southward across the property line and onto the easement on the Landowners' properties where it would discharge.

---

[1] Wayne Anderson died on July 24, 2023.

[10] Litigation ensued and the Landowners successfully resisted the Builder's plan, obtaining a declaratory judgment that the Builder's drainage plan would constitute both civil and criminal trespass. And the court permanently enjoined the Builder from entering, occupying, using, or installing any improvements or drainage infrastructure on the Landowners' properties, including but not limited to the easement, without the Landowners' consent. *See Anderson, et al. v. Autofish, LLC*, Cause No. 87C01-2302-CT-294 (Findings of Fact, Conclusions of Law, and Judgment Granting Injunctive Relief entered July 25, 2023).

[11] On August 15, 2023, Boonville's Board of Works held a public meeting to deliberate whether Boonville should intercede on the Builder's behalf to install the drainage outflow pipe from the detention basin according to the Builder's original plan, to which the Landowners objected. The Board of Works held a special meeting on August 21, at which the Board approved a different drainage plan ("Drainage Plan II") and awarded a contract for the construction of it. Drainage Plan II called for the installation of a drainage outflow pipe from the east side of "the Builder's privately-owned detention basin, [connecting] to a preexisting underground drain pipe that [would] cause the water to make a 90-degree turn first to the south and a second 90-degree turn to the west, around the perimeter of the Subdivision and through the Miller Pipe, and then finally discharge water into the Anderson-Miller [Private] Ditch, where it [would] flow southward across the Anderson Property." Appellant's App. Vol. II, pp. 181-82. The Landowners again objected to this use of their properties. The record

as developed thus far indicates that the Board did not determine that Drainage Plan II served a public purpose.

## The Present Controversy

[12] The Landowners filed a Verified Complaint for Declaratory Judgment and Request for Preliminary and Permanent Injunction on August 28 to enjoin Boonville from doing, via Drainage Plan II, what the Builder had been enjoined from doing with its original drainage plan. Specifically, the Verified Complaint sought: (1) a declaratory judgment that Boonville's Drainage Plan II would impose a greater burden on the Landowners than originally agreed in the easement; and (2) injunctive relief from Boonville's plan to discharge water from the Builder's retention basin into the Anderson-Miller private ditch.

[13] The Landowners also moved for a TRO that same day. They alleged that "[s]ince the issuance of the Injunction Order [against the Builder] the City and the Builder have engaged in concerted action to discharge water from the detention basin onto the Landowners' Properties despite the City having actual knowledge of the Injunction Order." Appellant's App. Vol. II, p. 35. They further alleged that "City representatives have publicly taken the position that the City is legally authorized to cause Builder's detention basin to discharge onto Landowners' Properties notwithstanding the Injunction Order prohibiting Builder from doing so." *Id.* The Landowners sought "to immediately and temporarily restrain [Boonville] from taking any action to cause water from a detention basin located on an adjacent property to be cast onto the

Landowners' Properties, or otherwise [occupy] or [use] their properties for drainage of the detention basin." *Id.* at 34.

[14] On August 30, the trial court found immediate and irreparable harm and granted the TRO. The TRO was to "remain in place and in full force and effect until a hearing on Plaintiffs' preliminary injunction . . . or until further order of this Court." *Id.* at 45. Trial Rule 65(B), however, provides that a TRO shall remain in effect for a period not to exceed 10 days.

[15] On August 31, Boonville filed for an automatic change of judge. But there was difficulty in finding a special judge who would agree to assume jurisdiction. An administrative event entered on September 25, 2023, explains the causes for the delay as follows: "Court is advised that all local Judges have recused themselves in this matter. Warrick County Clerk is directed to contact the Vanderburgh County Clerk's Office to assist in the selection of a Special Judge." *Id.* at 8. Four judges declined before a judge accepted jurisdiction of the case on October 4.

[16] On October 5, Boonville filed a Motion to Require Plaintiffs to Post a Security and to Set Hearing to Dissolve TRO, alleging the TRO was "over broad, unduly restrictive, without a basis in fact or law, and has been in effect for longer than permitted under the Trial Rules." *Id.* at 66. The next day, the court set a hearing for November 13 "by agreement." *Id.* at 9.

[17] The court limited the November 13 hearing to argument of counsel with no evidence heard. The court made clear at the beginning of the hearing, "This is

basically the legal argument issue of the restraining order. I'm not presenting witnesses, [or] evidence . . . . I am going to deal with the TRO . . . and then as far as the other issues I think we'll have to slot that for another day. . . . just legal argument, no witnesses." Tr. Vol. II, pp. 6, 10. The court also stated it was "taking up, too, for legal purposes" Boonville's Motion to Dissolve the TRO. *Id.* at 6.

[18] On November 16 the court issued an order stating in the first paragraph that it was rescinding the TRO previously entered against Boonville. Appellant's App. Vol. II, p. 204. In the second paragraph, the court found that the Landowners had "failed to show that [their] remedies at law are inadequate and the threatened injury to [them] outweighs the potential harm to [Boonville]" and that "the public interest would not be disserved by the issuance of the injunction." *Id.* Thus, the second paragraph of the court's order addressed whether a preliminary injunction should be issued, which had not been argued at the November 13 hearing.

[19] In October 2023, Boonville had moved to dismiss the Landowners' complaint pursuant to Trial Rule 12(B)(6). In March 2024, Boonville filed a Notice of Mootness because it had completed work on Drainage Plan II, the subject of the Landowners' TRO. On March 15 the trial court granted Boonville's 12(B)(6) motion and dismissed the Landowners' complaint.[2] *Id.* at 222.

---

[2] We observe that "[t]ypically, the doctrine of mootness leads courts to decline to address the merits of claims that have otherwise been resolved." *Horseman v. Keller*, 841 N.E.2d 164, 170 (Ind. 2006). Courts will reach

Boonville then filed its Fee Motion, with supporting affidavits, seeking an award of $119,478.62 in attorney fees and costs.

[20] On March 25, the Landowners filed their First Amended Complaint and asserted claims for Count I (declaratory judgment), Count II (violation of due process), and alternative claims for Count III (unconstitutional taking), and Count IV (inverse condemnation).[3] However, the Millers filed their Notice of Voluntary Dismissal under Trial Rule 41(A)(1)(a) before Boonville had filed its answer to the First Amended Complaint, which the trial court granted without prejudice. The court also denied Boonville's request to hold the Millers liable under the Fee Motion. Boonville did not object to the dismissal of the Millers as plaintiffs but did object to dismissal of the Fee Motion as against them. Thereafter, Anderson filed her motion for voluntary dismissal without prejudice under Trial Rule 41(A)(2). As it had done with the Millers, on July 15 the trial court granted Anderson's motion to dismiss without prejudice and denied Boonville's Fee Motion as against her.

---

the merits of the claim "[w]here there is a matter of great public importance . . . and the possibility of repetition[.]" *Id.* Neither is the case here. Thus, the trial court's conclusion that the matter was moot was not a determination on the merits.

[3] The inverse condemnation statute provides as follows:

> A person having an interest in property that has been or may be acquired for a public use without the procedures of this article or any prior law followed is entitled to have the person's damages assessed under this article substantially in the manner provided in this article.

Ind. Code § 34-24-1-16 (2002).

This appeal ensued.

## Discussion and Decision

Boonville appeals from the April 17 and July 15 orders and contends that the trial court erred by granting the Landowners' dismissals without prejudice, and without conditioning the dismissals upon their payment of damages to Boonville for having been wrongfully enjoined. The premise of Boonville's claim is that the Landowners "obtained an improper TRO" and that the court abused its discretion "by failing to hold a hearing on damages and denying Boonville its reasonable legal costs and fees incurred while being wrongfully enjoined." Appellant's Br. pp. 14-15. Boonville further alleges that the dismissals "should have been conditioned upon [the Landowners] paying all of its legal fees and costs in defense of the dismissed and withdrawn claims" as well as "all [of] its attorney's fees and costs incurred after the TRO was rescinded and on appeal." *Id.* at 15.

Disposition of this appeal turns on whether there was or should have been a determination that Boonville was wrongfully restrained. On this record, four trial rules are implicated: Trial Rules 65(B) and (C), 12(B)(6), 41(A)(1)(a), and 41(A)(2). Boonville contends that in its November 16 order "the trial court determined that Boonville had been wrongfully [restrained]" under Trial Rule 65(B), and Boonville was therefore entitled to an award of damages under Trial Rule 65(C). *Id.* Boonville further contends that the trial court's March 15 order of dismissal under Trial Rule 12(B)(6) also determined that Boonville had been

wrongfully restrained. And, finally, Boonville contends that the trial court erred when it allowed the dismissal of the Millers under Trial Rule 41(A)(1)(a) and the dismissal of Anderson under Trial Rule 41(A)(2) without prejudice and without terms and conditions, including attorney's fees. Thus, Boonville maintains that the trial court abused its discretion when it failed to conduct a hearing and denied Boonville's Fee Motion under Trial Rule 65(C).

## A. Standard of Review

[24] The standard of review in this appeal is abuse of discretion. "'An abuse of discretion occurs when the judgment is clearly against the logic and effect of the facts and circumstances before the court or is contrary to law.'" *Logan v. Evans*, 230 N.E.3d 371, 378 (Ind. Ct. App. 2024) (quoting *Ayers v. Stowers*, 200 N.E.3d 480, 484 (Ind. Ct. App. 2022)). "A judgment is contrary to law when the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to only one conclusion, but the trial court reached a different conclusion." *Clark v. Crowe*, 778 N.E.2d 835, 839 (Ind. Ct. App. 2002). When considering a trial court's decision to award or deny costs and damages under Indiana Trial Rule 65(C), which may include attorney's fees, in the absence of an affirmative showing of error or abuse of discretion, we must affirm the trial court. *Bigley v. MDS of Wayne Twp. Schs.*, 881 N.E.2d 77, 81 (Ind. Ct. App. 2008).

[25] Further, where the party who has the burden of proof at trial appeals, he appeals from a negative judgment and will prevail only if he establishes that the

judgment is contrary to law. *Logan*, 230 N.E.3d at 377. Here, Boonville did not prevail when it sought damages, reasonable legal costs and fees under Trial Rule 65(C). "A party that has unsuccessfully sought an award of fees is in the position of one appealing from a negative judgment, and we will not reverse such a judgment unless it is contrary to law." *Int'l Bus. Mach. Corp. v. ACS Human Serv., LLC*, 999 N.E.2d 880, 890 (Ind. Ct. App. 2013), *trans. denied.*

## B. The November 16 Order Dissolving the TRO

[26] Boonville contends that in its November 16 order, "the trial court dissolved the TRO on the merits," Reply Br. p. 11, and, thus, that "the trial court determined that Boonville had been wrongfully enjoined." Appellant's Br. p. 15. We are not persuaded. In *National Sanitary Supply v. Wright*, 644 N.E.2d 903, 905-06 (Ind. Ct. App. 1994), *trans. denied*, we rejected the same inferential leap that Boonville makes here, namely, that the mere fact an injunction was dissolved proves wrongful restraint.

[27] A TRO may be granted if "it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition[.]" Trial Rule 65(B)(1). Here, the first trial judge, who had tried the *Anderson v. Autofish* case and was familiar with the underlying facts, entered a TRO without a hearing, finding that "immediate and irreparable injury, loss, or damage" will result to the Landowners before Boonville can be heard in opposition. Appellant' s App. Vol. II, p. 45 (TRO

¶22).[4] The special judge then assumed jurisdiction on October 4 and scheduled a hearing "by agreement" on November 13. The court limited the November 13 hearing to "just legal argument" on whether the TRO should remain in effect and Boonville's motion to dissolve the TRO, and no witnesses or evidence were presented. The court then entered the November 16 order which addresses the TRO in the first paragraph, as follows:

> This Matter is before the Court upon review of Plaintiffs['] Motion for [TRO], and the Court having reviewed the Motion, hearing argument and taking this matter under advisement and being duly advised, now DENIES Plaintiffs' Motion and RESCINDS the [TRO] previously entered on August 30, 2023.

*Id.* at 204.

[28] The second paragraph in the November 16 Order addresses three of the four requirements for a preliminary injunction and says:

> Plaintiffs [have] failed to show that the movant's remedies at law are inadequate and the threatened injury to the Plaintiffs outweighs the potential harm to the Defendants and its constituents and that the results from the granting of an *injunction*, the public interest would not be disserved by the issuance of the *injunction*.

---

[4] Although Boonville complains that the Landowners obtained the TRO without proper notice, security, or hearing, those issues are not before us.

*Id.* (emphases added). Boonville characterizes that language as a "specific determination" and "specific findings" that the TRO was wrongfully entered. Appellant's Br. pp. 17-18; Reply Br. p. 8. We cannot agree. The first paragraph of the November 16 order simply dissolves the TRO "previously entered" and declares that Boonville is "no longer" restrained but contains no findings. Appellant's App. Vol. II, p. 204. The second paragraph of the order does not address the TRO. Rather, that paragraph refers prospectively to "the granting of an injunction" and "the issuance of the injunction," an issue not argued by the parties at the November 13 hearing and on which no evidence had been presented. *Id.*

[29] Thus, Boonville mischaracterizes the second paragraph of the November 16 order dissolving the TRO as "specific findings" that the Landowners had failed to prove they were entitled to a TRO. Boonville uses the term "injunction" as if it encompasses both a temporary restraining order and a preliminary injunction. While Trial Rule 65(C) recognizes the "enjoined or restrained" distinction, our own case law often uses the terms "enjoin" and "restrain" generically and interchangeably and does not always make the distinction between a preliminary injunction and a temporary restraining order. *See* Trial Rules 65(A) and 65(B). Nevertheless, the requirements for each are obviously different. A TRO maintains the status quo for a short time until both parties can be heard, and a preliminary injunction is generally used to preserve the status quo pending a full determination on the merits. *TacCo Falcon Point, Inc, v. Atlantic Ltd. P'ship*, 937 N.E.2d 1212, 1219 (Ind. Ct. App. 2010). The recitations in the

second paragraph of the November 16 order are surplusage. With respect to the TRO, the order was based solely on the oral argument of counsel and simply dissolved it without making any other determination about it. Thus, just as in *National Sanitary Supply* (where a preliminary injunction was issued and dissolved), there was no final or ultimate determination that the TRO was not warranted on the merits and no finding that Boonville was wrongfully restrained. 644 N.E.2d at 906.

## C. The March 15 Order Granting the Trial Rule 12(B)(6) Motion To Dismiss

[30] Boonville next asserts that in its March 15, 2024, order the court dismissed the Landowners' complaint seeking injunctive relief "because the trial court determined that [the Landowners] could not win on the merits." Reply Br. p. 11. Thus, Boonville contends that that order must be interpreted to mean that Boonville had been wrongfully restrained. But, again, the trial court made no findings or determination on the question of whether Boonville was wrongfully restrained. Further, Boonville's argument on appeal that a 12(B)(6) dismissal is a judgment on the merits of the claims misconstrues the meaning, operation, and effect of a Trial Rule 12(B)(6) dismissal of an original complaint, which is not a final determination "on the merits" but only a provisional determination that the complaint, as pleaded, fails to state a claim.

[31] A Trial Rule 12(B)(6) dismissal is without prejudice since the complaining party remains able to file an amended complaint within the parameters of the rule. *Thacker v. Bartlett*, 785 N.E.2d 621, 624 (Ind. Ct. App. 2003). And such a

dismissal "also does not usually operate as an adjudication on the merits and is not *res judicata*." *Id.* (citing *Browning v. Walters*, 616 N.E.2d 1040, 1044 (Ind. Ct. App. 1993)). Our review of a Trial Rule 12(B)(6) dismissal is de novo, giving no deference to the trial court's decision. *Hipps v. Biglari Holdings, Inc.*, 136 N.E.3d 629, 635 (Ind. Ct. App. 2019), *trans. denied*.

[32] Boonville maintains that the Trial Rule 12(B)(6) dismissal of the original complaint establishes "conclusively" that the TRO never should have been issued. Appellant's App. Vol. III, p. 25. A Trial Rule 12(B)(6) motion is essentially procedural, while a Trial Rule 12(C) motion for judgment on the pleadings is substantive. *Davis ex rel. Davis v. Ford Motor Co.*, 747 N.E.2d 1146, 1150 (Ind. Ct. App. 2001), *trans. denied*. So, too, here. The court's 12(B)(6) dismissal was not a determination on the merits but a procedural outcome because Trial Rule 12(B) allows a party an absolute right to amend a pleading when a motion to dismiss for failure to state a claim is granted. "When a motion to dismiss is sustained for failure to state a claim under subdivision (B)(6) of this rule the pleading may be amended once as of right pursuant to Rule 15(A) within ten [10] days after service of notice of the court's order sustaining the motion and thereafter with permission of the court pursuant to such rule." T.R. 12(B). The plaintiff can: "(1) determine that the claims only currently lack merit because of the way in which they are pleaded—a matter of form—and correct the pleadings; or (2) reject the trial court's ruling and its implication and challenge the ruling on appeal." *DeCola v. Steinhilber*, 207 N.E.3d 440, 447 (Ind. Ct. App. 2023). "Thus, it is the plaintiff who decides

whether to concede that a Rule 12(B)(6) dismissal is a final judgment on the merits of her claims." *Id.* The Landowners chose to amend their complaint. Boonville might have filed a Trial Rule 12(C) motion for a judgment on the pleadings, which has no automatic right of amendment, but that is not what occurred.

[33]     Since the complaint may be amended once as of right, the dismissal is interlocutory, and the cause of action remains in fieri for ten (10) days until the right to amend is exercised or lost. The distinction between interlocutory orders and final judgments is well-established and supported by abundant authority, including both the trial and appellate rules and a significant number of reported cases. *See Ind. Newspapers, Inc. v. Miller*, 980 N.E.2d 852, 861 (Ind. Ct. App. 2012). "A Trial Rule 12(B)(6) dismissal becomes an adjudication on the merits only after the complaining party opts to appeal the order instead of filing an amended complaint." *Thacker*, 785 N.E.2d at 624 (citing *Platt v. State*, 664 N.E.2d 357, 361 (Ind. Ct. App. 1996), *cert. denied*). Here, the Landowners filed an amended complaint within the ten (10) days allowed under the rules. The trial court's March 15 order granting Boonville's motion to dismiss was not a final or ultimate determination that the TRO was not warranted on the merits. *See Nat'l Sanitary Supply*, 644 N.E.2d at 906.

## D. The July 15 Order and Trial Rule 41(A)(2) Voluntary Dismissal

[34]     On June 24, Anderson filed her motion for voluntary dismissal under Trial Rule 41(A)(2) after Boonville had filed its answer to the First Amended Complaint.

Boonville filed its response to her motion on July 8. The trial court granted Anderson's motion without prejudice and also granted Anderson's request that Boonville's Fee Motion be denied as to her.

[35] Boonville argues that the trial court erred when it denied its Fee Motion as to Anderson. Boonville's argument is based, in part, on an assumption that, before granting Anderson's motion for voluntary dismissal, the court had already determined that the TRO had wrongfully restrained Boonville. As explained above, we cannot agree. Neither can we agree that "Plaintiffs' injunctive relief was legally deficient on its face and there were no circumstances through which Boonville was properly enjoined by Plaintiffs' TRO." Appellant's Br. pp. 18-19. The trial court found that the Landowners' motion for a TRO was "based on good cause shown" and, in effect, that the Landowners had made a prima facie showing, a colorable claim, that they were entitled to a time out pending a contested hearing.

## E. *Highland Realty* and Dismissal Under Trial Rule 41(A)(2)

[36] We next consider Boonville's argument that the Landowners "have effectively circumvented [Trial Rule 12(B)(6)] by filing their [Amended Complaint] and then quickly voluntarily dismissing it 'without prejudice' before responding to the second motion to dismiss, so they can attempt to file the same complaint another day." Appellant's Br. p. 24. Boonville also claims, "The trial court, in this instance, should have given Anderson a choice to either have Boonville's attorney's fees and costs paid for by [the Landowners], or have her Amended

Complaint dismissed with prejudice, as was done in *Highland Realty*." Reply Br. p. 17.

[37] In support of its argument Boonville relies on our Supreme Court's decision in *Highland Realty, Inc. v. Indianapolis Airport Authority*, 563 N.E.2d 1271 (Ind. 1990). In *Highland Realty*, our Supreme Court found "[r]equiring the plaintiff to reimburse the defendant for attorney's fees before voluntary dismissal in a case like this one, where litigation has been long and costly, is simply a means of protecting the defendant from the consequences of the plaintiff's choice to run up the legal services bill, then walk away and wait for a better day to refile its suit." 563 N.E.2d at 1273. Thus, the court concluded that "a trial court *may* properly condition plaintiff's voluntary dismissal without prejudice on the payment of a defendant's attorney's fees under T.R. 41(A)(2)." *Id.* (emphasis added). Here, Boonville contends that the trial court's failure to give Anderson a choice either to pay Boonville's damages or to have her Amended Complaint dismissed with prejudice, as was done in *Highland Realty*, "left the phrase 'terms and conditions' [in Trial Rule 41(A)(2)] without any meaning." Reply Brief p. 17.

[38] Boonville contends that the trial court should have conditioned the dismissal of the parties on payment of Boonville's attorney's fees for the Landowners' purportedly "unfounded lawsuit[,]" "improper TRO[,]" and "legally deficient claims," Appellant's App. Vol. III, pp. 59, 63 (Boonville's Response to Motion for Voluntary Dismissal), and to hold them "accountable for their litigation strategy." Reply Br. p. 20. Boonville accuses the Landowners of having

"unilaterally obtained a TRO against [it] on a claim that was factually unsupported and legally ungrounded." Appellant's Br. p. 22.

[39] The Landowners counter that Boonville has "attempted to bully the Plaintiffs into abandoning their claims by, among other things, threatening them with liability for exorbitant and inflated attorney fees" and has waged a "war of financial attrition." Appellant's App. Vol. III, pp. 51, 56. (Plaintiffs' Motion for Voluntary Dismissal). The Landowners contend that Boonville's request for an award of damages "may be calculated to discourage Landowners and other citizens from challenging Boonville's decisions by sending a message of the risk and expenses involved." Appellees' Br. p. 24. And they describe the City's attitude as, "We're dumping [water from the retention basin] in your private ditch whether you like it or not." Tr. Vol. p. 27.

[40] These allegations reflect the frustration of the parties with each other. This case has been vigorously contested on both sides but for only eleven months, from August 28, 2023 to July 15, 2024, including two months of administrative delays not chargeable to the Landowners. There was a twenty-two-day interruption needed to locate a special judge who would assume jurisdiction after Boonville's Trial Rule 76(B) motion and another forty-day delay before a hearing on the TRO after a special judge had been selected, a hearing which was scheduled "by agreement." In contrast, in *Highland Realty* the lawsuit was pending for over five years. 563 N.E.2d at 1273.

[41] We cannot say the Landowners have engaged in a frivolous or vexatious litigation strategy and have merely run up Boonville's legal bill and then walked away to file suit again later. To the contrary, Anderson stated in her motion that she "wishe[d] to voluntarily dismiss the claims and put an end to this litigation not because her claims lack merit—far from it—but because she cannot continue to fund this lawsuit." Appellant's App. Vol. III, p. 51. Anderson, her husband, Wayne, and the Millers had obtained a final judgment including a permanent injunction after a trial against the Builder in *Autofish*, the precursor to this case. When Anderson filed her Trial Rule 41(A)(2) motion, the trial court had already dismissed the Millers. Anderson's husband had died, she was left standing alone, and she gave up. These circumstances do not indicate that she engaged in "procedural maneuvering" as Boonville contends. Reply Br. p. 11. Boonville has been uniformly dismissive of the Landowners' complaint but, we note, has not claimed that the Landowners were engaged in a frivolous, unreasonable, or groundless action. *See* Ind. Code § 34-52-1-1 (General recovery rule) (1998). We are not persuaded by Boonville's argument, in effect, that the Landowners have misused the rules of trial procedure. We decline to second guess the trial court on this point.

[42] The authority to condition a plaintiff's voluntary dismissal "upon such terms and conditions as the court deems proper[,]" T.R. 41(A)(2), includes the authority not to impose any terms and conditions upon the dismissal. A dismissal without prejudice is the default rule under Trial Rule 41(A)(2). ("Unless otherwise specified in the order, a dismissal under this subsection is

without prejudice.").  As we said in *Tompa v. Tompa*, 867 N.E.2d 158, 166 (Ind. Ct. App. 2007), "there is no abuse of discretion for the trial court not to do that which it is not required to do."

[43]   We decline to interpret *Highland Realty* as a command to treat the word "may" in that opinion as if it were "shall."  Here, the trial court was well within its discretion not to impose terms and conditions upon Anderson's motion for voluntary dismissal of the Amended Complaint.  The holding in *Highland Realty* recognizes a trial court's discretion and does not limit the exercise of that discretion.  *Highland Realty* did not curtail a trial court's discretion under the "terms and conditions" clause in Trial Rule 41(A)(2), and the facts do not require a different outcome in this case.

## F.  Trial Rule 65(C) Requires a Finding

[44]   Indiana Trial Rule 65(C) provides in pertinent part that:

> (C) Security.  No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is *found to have been wrongfully enjoined or restrained*.  No such security shall be required of a governmental organization, but such governmental organization shall be responsible for costs and damages as may be incurred or suffered by any party who is *found to have been wrongfully enjoined or restrained*.

(Emphases added).

[45] The operative word in Trial Rule 65(C) is "found." Trial Rule 65(C) requires a finding supported by an adequate record. The predicate for an award of damages under Trial Rule 65(C) is a finding of fact that the allegedly injured party has been wrongfully enjoined or restrained. As previously discussed, Boonville incorrectly infers that the November 16 order dissolving the TRO and the March 15 order dismissing the original complaint determined it had been wrongfully restrained. But Trial Rule 65(C) requires that a party who claims to have incurred or suffered damages from a restraining order or preliminary injunction be "*found* to have been wrongfully enjoined or restrained." (Emphasis added). There is no such finding or determination in either the November 16 order dissolving the TRO or the March 15 order dismissing the original complaint under Trial Rule 12(B)(6). Indeed, Boonville's Fee Motion alleging that it had been wrongfully restrained by the TRO was not filed until March 22, 2024, after both hearings had been held and both orders had been entered, without considering that question.

[46] "A defendant's entitlement to attorney fees and costs under [Trial Rule 65(C)] arises when he *proves* that it has been finally or ultimately determined that injunctive relief was not warranted on the merits." *Nat'l Sanitary Supply*, 644 N.E.2d at 906 (emphasis added). As we have previously noted, there was no testimony or other evidence admitted on that issue at the November 13, 2023 hearing or the March 11, 2024 hearing, and the trial court did not find that the TRO was wrongful. An award of damages under Trial Rule 65(C) requires more than an inference that injunctive relief was not warranted on the merits.

It requires a finding "based on actual facts rather than on abstract possibilities," *Pflederer v. Kesslerwood Lake Ass'n, Inc.*, 878 N.E.2d 510, 514 (Ind. Ct. App. 2007) (quoting *IDEM v. Chem. Waste Mgmt., Inc.* 643 N.E.2d 331, 336 (Ind. 1994)), and not "until the court has finally decided that plaintiff was not entitled" to injunctive relief. *Pflederer*, 878 N.E.2d at 514 (quoting *Gubbins v. Delaney*, 115 N.E. 340, 342 (Ind. 1917)).

[47] In *National Sanitary Supply* we observed that there had been no finding that the preliminary injunction was wrongfully granted or overbroad. 644 N.E.2d at 906. And we said that, "Since there was never a subsequent hearing on the merits of the case, such as the hearing that occurs when a court is determining whether to issue a permanent injunction, no determination was made that the preliminary injunction was wrongfully granted because the covenants were unenforceable." *Id.* We concluded that "the test for determining if a preliminary injunction was wrongfully issued is not whether the injunction was ultimately dissolved but rather whether injunctive relief was warranted under the facts of the case." *Id.*

[48] Where a temporary injunction is dissolved and not replaced by a permanent injunction, the enjoined party is *generally* entitled to compensation for the damages it incurred. *Bigley v. MDS of Wayne Twp. Schools*, 881 N.E.2d 77, 81 (Ind. Ct. App. 2008) (emphasis added); *see also H & G Ortho, Inc. v. Neodontics Int'l, Inc.*, 823 N.E.2d 718, 733 (Ind. Ct. App. 2005); *Laux v. Chopin Land Assocs., Inc.*, 615 N.E.2d 902, 905 (Ind. Ct. App. 1993), *trans. denied*. Nevertheless, the fact that a court issues and subsequently vacates a TRO does not in itself

require an award of damages. *See Bigley*, 881 N.E.2d at 83-84; *see also Noble Cnty. v. Rogers*, 745 N.E.2d 194,199-200 (Ind. 2001) (defendant denied damages after dissolution of preliminary injunction on appeal). The party seeking damages must prove that it has been wrongfully restrained, and that determination is contingent on the specific circumstances, the trial court record, and the trial court's sound discretion. And in the absence of an affirmative showing of error or abuse of discretion, we must affirm the trial court. *Bigley*, 881 N.E.2d at 81.

## G.  Boonville is Entitled to a Hearing

[49] Last, Boonville contends that whether there is a trial on the merits is "immaterial to Plaintiffs' obligation to pay damages for securing a wrongful TRO against Boonville." Reply Br. p. 11. We agree. A defendant is entitled to recover any damages incurred for having been wrongfully enjoined "if he prevails at a later hearing[,]" *Palace Pharmacy Inc., v. Gardner*, 329 N.E.2d 642, 644 (Ind. Ct. App. 1975); *see also Hacienda Rest. v. Hacienda Franchise*, 569 N.E.2d 661, 671 (Ind. Ct. App. 1991) ("security requirement is intended to compensate the defendant for damages resulting from a preliminary injunction if he prevails at a later hearing"), *trans. denied*, or if he ultimately wins the case. *Nat'l Sanitary Supply*, 644 N.E.2d at 906. We note that in its October 5 motion to require that the plaintiffs give security and for a hearing to dissolve the TRO, Boonville stated correctly that it would be entitled to recover its attorney's fees and costs *"[s]hould Boonville ultimately prevail in this matter*." Appellant's App.

Vol. II, p. 68 (emphasis added). But at this juncture, Boonville has not prevailed.

[50] We acknowledge Boonville's argument that injunctive relief was not available to the Landowners and that inverse condemnation was their only conceivable remedy. For example, in *Dible v. City of Lafayette*, 713 N.E.2d 269, 278 (Ind. 1999) the Supreme Court recognized that "[e]quitable relief is not available to enjoin an alleged taking of private property for public use, duly authorized by law, when a suit for compensation can be brought against the government entity subsequent to the taking." Boonville also relies on *Town of Linden v. Birge*, 204 N.E.3d 229, 233 (Ind. 2023), where our Supreme Court "clarif[ied] the proper analytical framework for takings claims based on flooding . . . ." And Boonville contends that "the detention basin doesn't just serve one developer, it serves the entire area," Tr. Vol. II, p. 51, and cites our opinion in *Wymberley Sanitary Works v. Batliner*, 904 N.E.2d 326, 334, 335 (Ind. Ct. App. 2009), where we recognized that the fact a utility installation will benefit a developer's subdivision "does not alter the fact that there is a public benefit as well" and that our inquiry should take into account "'all the surrounding facts and circumstances tending to show what is the actual, principal and real use to be made of the property.'" (quoting *Hawley v. South Bend Dep't of Redev.*, 383 N.E.2d 333, 340 (Ind. 1978)).

[51] While injunctive relief is not available to prevent a taking for a public purpose, *see Murray v. City of Lawrenceburg*, 925 N.E.2d 728, 732 (Ind. 2010), Boonville did not initiate eminent domain proceedings, and there has been no

determination that Boonville's discharge of water on to the Landowners' private ditch was done for a public purpose. Whether a particular use is a public use is a question for the courts to determine. *Id.* at 733. The Landowners rely on *701 Niles, LLC v. AEP Indiana Michigan Transmission Co., Inc.*, 191 N.E.3d 931, 942 (Ind. Ct. App. 2022) where we held that injunctive relief is the appropriate remedy for an unconstitutional use of eminent domain power, and *Muncie v. Pizza Hut of Muncie, Inc.*, 357 N.E.2d 735, 737 (Ind. Ct. App. 1976) where we held that injunctive relief is proper when inverse condemnation is inadequate to relieve an irreparable continuing injury. The Landowners also contend that Boonville was acting as a surrogate or proxy for the Builder to provide drainage for Builder's privately-owned detention basin when it implemented "the developer's drainage plan" and, as such, engaged in a "subterfuge for private use" and "an end run" around the injunction entered against the Developer in *Autofish*. Appellees' Br. p. 35; Tr. Vol. II, p. 27. And the Landowners invoke *Wymberley*, where we said that "A condemning authority's proposed taking is improper if it is merely for a private use," 904 N.E.2d at 334, and that "every Hoosier landowner 'has a right constitutionally to defend against subterfuge and bad faith in the seizure of his property, and may show that it is not to be applied to the public purpose and use as alleged.'" *Id.* at 335 (quoting *Hawley,* 383 N.E.2d at 340).

[52] The Landowners also rely upon the rule the trial court followed in *Autofish*, namely, that "one may not collect or concentrate surface water and cast it, in a body, upon his neighbor." *See Anderson, et al. v. Autofish, LLC*, Cause No.

87C01-2302-CT-294, *11 (Findings of Fact, Conclusions of Law, and Judgment Granting Injunctive Relief entered July 25, 2023) (quoting *Argyelan v. Haviland*, 435 N.E.2d 973, 976 (Ind. 1982)). Thus, the Landowners contend that the water discharged from the Builder's retention basin into their private ditch is not surface water and that Drainage Plan II serves a private and not a public purpose. Boonville counters that the water is discharged from the basin into an existing storm pipe, that the management of storm water constitutes a public purpose, and that Boonville would have the authority to condemn an easement across the Landowners' property for storm drainage. *See* Tr. Vol. II, pp. 23, 48.

[53]   While the parties have advanced these and other arguments before the trial court and this Court, there has been no adjudication on the merits of these competing narratives. The merits of the case cannot be divorced from the determination on the issue of damages. *Nat'l Sanitary Supply*, 644 N.E.2d at 906. We therefore remand with instructions for the trial court to consider and weigh all relevant evidence, including "all the surrounding facts and circumstances tending to show what is the actual, principal and real use to be made of the property." *Hawley*, 383 N.E.2d at 340. The trial court may take judicial notice of the findings, conclusions, and judgment of the trial court in *Autofish*, although Boonville was not a party to that case, and the judgment in that case is not res judicata or otherwise preclusive.

[54]   This case has not been tried to a final judgment. Neither party has won the underlying case, and the outcome of a "later hearing" on whether the TRO was wrongful will not turn merely upon the fact that the TRO was dissolved. To

obtain an award of damages, Boonville must prove by a preponderance of the evidence that it is entitled to prevail in "a subsequent hearing on the merits of the case, such as the hearing that occurs when a court is determining whether to issue a permanent injunction[.]" *See Nat'l Sanitary Supply*, 644 N.E.2d at 906.

## H. Consideration of Damages on Remand

Under Trial Rule 41(A)(2), an action shall not be dismissed save upon order of the court and "upon such terms and conditions as the court deems proper." The April 17 order dismissing the Millers under Trial Rule 41(A)(1)(a) and the July 15 order dismissing Anderson under Trial Rule 41(A)(2) made no determination on the merits and left the parties where they were. The dismissal orders do not vindicate Boonville's contention that it was wrongfully restrained. While an order of dismissal may impose conditions, an award of attorney's fees or other damages is not required by either Trial Rule 41(A) or *Highland Realty*. Accordingly, we decline to hold that the trial court abused its discretion in dismissing the Landowners without conditions, and we affirm the trial court to the extent that it did not award attorney's fees or other damages or attach "terms and conditions" to the dismissal orders pursuant to Rules 41(A)(1)(a) and 41(A)(2). These orders were not contrary to law.

We also conclude that the trial court did not err when it declined to award Boonville Trial Rule 65(C) damages on the record as it existed on July 15, 2024. As of that date, Boonville had not proven that it was wrongfully restrained, which is a condition precedent to an award of damages. However, we hold that the trial court erred in not conducting a hearing for the presentation of evidence

and arguments relative to Boonville's claim for Trial Rule 65(C) damages. *Hampton v. Morgan*, 654 N.E.2d 8, 10-11 (Ind. Ct. App. 1995). Boonville is entitled to a Trial Rule 65(C) hearing on its Fee Motion.

[57] By its terms, Trial Rule 65(C) is limited to restraining orders and injunctions. *Ace Bail Bonds v. Government Payment Service, Inc.*, 892 N.E.2d 702, 707 (Ind. Ct. App. 2008), *trans. denied*. If on remand the trial court determines that a damage award is appropriate and grants Boonville's Fee Motion in whole or in part, the Landowners would be liable only for the damages that it incurred as the result of the wrongfully issued TRO. *See id*. "[T]he trial court, within its discretion, need only award the sum it feels was properly incurred as a result of defending [against the restraining order] as opposed to fees and costs generated by the entire course of the litigation. *See IHSAA v. Vasario*, 726 N.E.2d 325, 335 (Ind. Ct. App. 2000). And "a reversal of a [temporary restraining order] on the merits requires only an assessment of whether attorney's fees should be awarded, not a definite award." *See Crossman Cmtys., Inc. v. Dean*, 767 N.E.2d 1035, 1044 n.5 (Ind. Ct. App. 2002).

[58] "In order to recover damages because of an injunction it must be shown that any damage sustained is the natural, actual, and proximate result of such injunction." *Hampton*, 654 N.E.2d at 9 (quoting *United States Fidelity & Guaranty Co. v. State ex rel. Ogden*, 5 N.E.2d 115, 117 (Ind. Ct. App. 1936)). Merely consequential damages are not properly allowable, "the limit being such damages as flow directly from the injunction and its immediate consequence." *Id*. "In an action *involving more than an injunction*, a T.R. 65(C) damage award

based upon attorney fees should be restricted to the fees necessarily incurred in defending against the injunction." *Id.* at 10 (emphasis added). Should Boonville prevail on remand after a hearing on damages, it may be entitled to attorney's fees incurred before the trial court and on appeal in obtaining an award. *See Bigley*, 881 N.E.2d at 86. But we reject Boonville's contention that a dismissal should be conditioned upon payment of "all of [Boonville's] legal fees and costs incurred in defense of the dismissed and withdrawn claims[,]" including such fees and costs incurred after the TRO was rescinded. Appellant's Br. p. 15.

[59] At the November 13 hearing, Boonville stated that, "if the Court does not extend the TRO at this point, if the Court dissolves . . . the TRO and does not enter a preliminary injunction, [Boonville's] not asking to get fees going forward after that point, if we go have a trial on the merits." Tr. Vol. II, p. 23. We agree with Boonville that this statement does not amount to an estoppel, if only because the question of damages was not before the trial court on November 13, and the trial court did not rely upon the statement.[5] But the statement is not incorrect. Here, in an action involving more than injunctive relief and where the damage award sought is based upon attorney's fees, Boonville's claim to Trial Rule 65(C) damages is "restricted to the fees

---

[5] Boonville claims an entitlement to attorney's fees and costs under both Trial Rule 65(C) and the terms and conditions clause of Trial Rule 41(A). Boonville claims that under *Highland Realty* it is entitled to an award of *all* attorney's fees and costs. Reply Br. p. 20. However, as we have discussed, we disagree with Boonville's reading of *Highland Realty*, and hold that the trial court did not abuse its discretion by exercising its discretion not to impose terms and conditions.

necessarily incurred in defending against" the TRO. *Hampton*, 654 N.E.2d at 10.

## Conclusion

In sum, we conclude that the trial court did not abuse its discretion when it allowed the Millers' dismissal under Trial Rule 41(A)(1)(a) and Anderson's dismissal under Trial Rule 41(A)(2) without prejudice and did not impose "terms and conditions" on the dismissals. We further conclude that neither the November 16 order, which dissolved the TRO, nor the March 15 order, which dismissed the original complaint under Trial Rule 12(B)(6) "found" Boonville "to have been wrongfully restrained" as required by Trial Rule 65(C). But we also hold that the trial court erred when it dismissed Boonville's Trial Rule 65(C) damages claim without a hearing on the merits. On that issue we reverse and remand with instructions for an evidentiary hearing ab initio on the propriety of the TRO, on whether Boonville is entitled to an award of Trial Rule 65(C) damages on the facts of this case, and, if so, for a determination of the appropriate, just, and reasonable amount of damages. While Boonville's claim that that the TRO was a wrongful restraint was not finally or ultimately determined, its claim survived the Trial Rule 41(A)(1)(a) and 41(A)(2) dismissals.

Boonville is entitled to what our cases have described as a "subsequent" or "later hearing" on its claim to have been wrongfully restrained. *See Nat'l Sanitary Supply*, 644 N.E.2d at 906; *Laux*, 615 N.E.2d at 906; *Palace Pharmacy*,

329 N.E.2d at 644. The outcome will be determined not by the previous orders, as we have explained, but by which theory of the underlying case prevails, Boonville's theory, which would support a damages award, or the Landowners' theory, which would not support a damages award.

[62] Thus, we affirm in part, reverse in part, and remand with instructions that the trial court conduct an evidentiary hearing on whether Boonville is entitled to an award of Trial Rule 65(C) damages and, if so, in what amount.

[63] Affirmed in part, reversed in part, and remanded with instructions.


Bradford, J., and Foley, J., concur.


ATTORNEYS FOR APPELLANT

Stephen C. Unger
Andrew M. McNeil
Jacob T. Antrim
Bose McKinney & Evans LLP
Indianapolis, Indiana

Mark K. Phillips
Phillips Law, P.C.
Boonville, Indiana

ATTORNEYS FOR APPELLEES

Jean M. Blanton
Kristen E. Hahn
Stoll Keenon Ogden PLLC
Evansville, Indiana